Appeal by the defendant from a judgment of the Supreme Court, Queens County (Latella, J.), rendered October 20, 2009, convicting him of criminal possession of a controlled substance in the third degree, upon a jury verdict, and imposing sentence. By decision and order of this Court dated August 2, 2011, the judgment was reversed, and the first count of the indictment, which charged criminal possession of a controlled substance in the third degree, was dismissed (see People v McFadden, 87 AD3d 554 [2011]). By order of the Court of Appeals dated December 28, 2011, the People were granted leave to appeal from the decision and order of this Court (see People v McFadden, 18 NY3d 860 [2011]). By opinion and order of the Court of *1021 Appeals dated December 13, 2012, the decision and order of this Court was reversed, the first count of the indictment, which charged criminal possession of a controlled substance in the third degree, was reinstated, and the matter was remitted to this Court for consideration of the issues raised but not determined on the appeal to this Court (see People v McFadden, 20 NY3d 260 [2012]).
Ordered that, upon remittitur from the Court of Appeals, the judgment is modified, on the facts, by reducing the defendant’s conviction of criminal possession of a controlled substance in the third degree to criminal possession of a controlled substance in the seventh degree, and vacating the sentence imposed thereon; as so modified, the judgment is affirmed, and the matter is remitted to the Supreme Court, Queens County, for the imposition of a sentence of time served on the conviction of criminal possession of a controlled substance in the seventh degree.
The defendant was charged with criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree, and criminal possession of a controlled substance in the seventh degree. At his first trial, the jury deadlocked on the two higher charges, and the defendant agreed to a partial verdict, limited to the count alleging that he committed the offense of criminal possession of a controlled substance in the seventh degree. The Supreme Court accepted a partial verdict of guilty on that count, and declared a mistrial on the two remaining counts, including the greater offense of criminal possession of a controlled substance in the third degree. Thereafter, a second trial was conducted.
After his second trial, the jury found the defendant guilty of criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1] [possession with intent to sell]), but not guilty of criminal sale of a controlled substance in the third degree. Following this verdict, the Supreme Court set aside the conviction of the inclusory concurrent count of criminal possession of a controlled substance in the seventh degree, and thereafter sentenced the defendant to a determinate term of imprisonment of seven years, to be followed by a period of three years of postrelease supervision. The defendant appealed from the judgment, contending that he had been subjected to double jeopardy, and that his conviction of criminal possession of a controlled substance in the third degree was against the weight of the evidence. In a decision and order of this Court dated August 2, 2011, the judgment was reversed on double jeopardy grounds, and the first count of the indictment, which charged criminal *1022 possession of a controlled substance in the third degree, was dismissed (see People v McFadden, 87 AD3d 554 [2011]). Upon reaching this conclusion, this Court declined to reach the defendant’s weight-of-the-evidence argument, since it had been rendered academic.
In an opinion and order dated December 13, 2012 (see People v McFadden, 20 NY3d 260 [2012]), the Court of Appeals reversed this Court’s decision. The Court of Appeals also remitted the matter to this Court for consideration of the issues raised but not determined on the appeal to this Court, to wit, whether the defendant’s conviction of criminal possession of a controlled substance in the third degree was against the weight of the evidence.
“Upon defendant’s request, the Appellate Division must conduct a weight of the evidence review” and, thus, “a defendant will be given one appellate review of adverse factual findings” (People v Danielson, 9 NY3d 342, 348 [2007]; see CPL 470.15 [5]; People v Romero, 7 NY3d 633, 636 [2006]). There is no preservation requirement for appellate weight-of-the-evidence review (see People v Mann, 63 AD3d 1372, 1373 [2009]). If a finding in favor of the defendant would not have been unreasonable, then “the court must weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions” (People v Danielson, 9 NY3d at 348). Once the Court conducts such an analysis, it must then decide whether the verdict finding the defendant guilty beyond a reasonable doubt was warranted. “Essentially, the court sits as a thirteenth juror and decides which facts were proven at trial” (id., citing Tibbs v Florida, 457 US 31, 42 [1982]; see People v Noble, 86 NY2d 814, 815 [1995]). If it appears that the fact finder “ ‘failed to give the evidence the weight it should be accorded, then the appellate court may set aside the verdict’ ” (People v Mateo, 2 NY3d 383, 410 [2004], cert denied 542 US 946 [2004], quoting People v Bleakley, 69 NY2d 490, 495 [1987]).
Upon conducting our analysis in this case, in accordance with the above principles, we conclude that the verdict convicting the defendant of criminal possession of a controlled substance (here, cocaine) in the third degree was against the weight of the evidence. To establish a defendant’s guilt of this crime, the People must prove that the defendant “knowingly and unlawfully possesses ... a narcotic drug with intent to sell it” (Penal Law § 220.16 [1] [emphasis added]).
At trial, the People’s witness, a New York City Police Department detective, testified that, on the day of the arrest, July 22, *1023 2008, he and his partner, a New York City Police Department sergeant, were seated in an unmarked police car observing an area near the beach in Far Rockaway, Queens. At around 6:30 p.m., the detective observed two males meet, face each other, and “instantaneously” exchange something from right hand to right hand. These men were later identified as the defendant and a man named Jamie Lopez. However, on cross-examination, the detective admitted that he did not actually see anything transferred between Lopez and the defendant.
The police sergeant offered a similar account. He testified that he saw two men stop and look at each other, and then saw the defendant, without reaching into his pocket, hand a “white piece of paper to the other individual, in exchange for money.” The sergeant offered conflicting testimony as to how long this transaction lasted, stating at one point in his testimony that it was merely seconds and at another point that it was long as two to three minutes. After making their observations, the police officers arrested Lopez and the defendant.
After the arrest, the officers recovered two bags of marijuana from Lopez, as well as a “white envelope of cocaine [bearing a picture of] a seal with a ball on its nose and the word ‘Seal.’ ” From the defendant’s person, the officers recovered “[f]our white envelopes of cocaine, with a seal on it, a ball on the seal’s nose and word ‘Seal’ itself, and $20.”
Lopez testified for the defense. He testified, inter alia, that he was a housekeeper at Brookhaven Nursing Home (hereinafter Brookhaven) in Far Rockaway. He stated that he knew the defendant because the defendant previously worked at Brookhaven, but that the two men worked different shifts and did not socialize. Lopez stated that, on the day of the arrest, at some time before 2:00 p.m., he had purchased one packet of cocaine in “blue white cellophane paper,” which had the word “Seal” and a picture of a seal on it, outside of a store on 20th Street, from someone other than the defendant. Lopez further stated that he had previously purchased cocaine from this seller, but he did not know his name; that he had previously purchased cocaine at that location; and that he had previously purchased cocaine with the word “Seal” on it. Lopez testified that, following this purchase, he went to the nursing home to start his shift, which began at 2:00 p.m.
According to Lopez, later that day, at 6:00 p.m., he went on his dinner break. At that time, Lopez still had the “Seal” packet of cocaine that he had purchased earlier in the day. He testified that it was a sunny day, and that he walked onto the dunes near the beach, across the street from Brookhaven, where he *1024 observed the defendant approximately 25 to 30 feet away from him, fishing on the beach along with two other men. As Lopez recalled it, Lopez waved to the defendant, and remained either on the dunes or a nearby dock for about two minutes before heading back to the nursing home. Lopez further testified that, as he walked on the boardwalk, he was stopped by the police, who thereafter searched him, found cocaine and marijuana on his person, and handcuffed him. Lopez asserted that did not see the defendant until five minutes later, when the police brought him, in handcuffs, towards a police car. Lopez testified that he did not see what transpired between the time he was arrested and the time he saw the defendant in handcuffs. Finally, Lopez testified that he did not buy any drugs from the defendant on July 22, 2008.
Given Lopez’s testimony, it would not have been unreasonable for the jury to find that the defendant had no intent to sell the four packets of cocaine that the defendant was carrying on the date that he was arrested. Indeed, it would have been reasonable for the jury to credit Lopez’s testimony and find that the defendant was fishing on the beach, and that he merely possessed the four packets of cocaine for his own personal use (see People v Vega, 254 AD2d 313 [1998]; People v Washington, 209 AD2d 560 [1994], affd 87 NY2d 945 [1996]; People v Hernandez, 203 AD2d 479 [1994]; cf. People v Cruz, 197 AD2d 630 [1993]; People v Patton, 187 AD2d 538 [1992]). As our dissenting colleague correctly points out, the defendant’s acquittal on the charge of criminal sale of a controlled substance in the third degree does not necessarily render his conviction on the charge of criminal possession of a controlled substance in third degree as against the weight of the evidence. However, the jury apparently rejected the testimony of both the detective and the sergeant concerning the defendant’s alleged sale of cocaine to Lopez, and the record is otherwise bereft of any evidence of the defendant’s intent to sell (see People v Fisher, 104 AD3d 868, 869-870 [2013]; People v Lindsey, 52 AD3d 527, 529-530 [2008]).
As noted above, the amount of cocaine recovered from the defendant was relatively small and not inconsistent with personal use. Indeed, convictions for criminal possession of a controlled substance involving intent to sell generally stem from situations where a significantly greater quantity of drugs is recovered from the defendant’s person (see e.g. People v Pedroza, 48 AD3d 706 [2008]; People v Conyers, 48 AD3d 362 [2008]; People v Robinson, 26 AD3d 202 [2006]; People v Fallen, 249 AD2d 771 [1998]; People v Walton, 184 AD2d 675 [1992]). Even more important, the defendant was found to be in possession of no *1025 drug paraphernalia or weapons, and he had only $20 in cash (see People v McCoy, 59 AD3d 856, 857 [2009] [there was insufficient evidence to prove that the defendant was guilty of criminal possession of a controlled substance in the third degree where he was carrying no cash and there was no evidence that he possessed “a weapon or any paraphernalia commonly associated with the sale of drugs (a)nd ... no testimony established that the small quantity of heroin found in his possession was inconsistent with personal use” (citations omitted)]; see also People v Alvino, 71 NY2d 233, 245 [1987]; People v Smith, 74 AD3d 1249 [2010]; People v Jones, 47 AD3d 961 [2008]; People v Barton, 13 AD3d 721 [2004]). Although there was testimony that street drug sales often involve bags of drugs costing $20 each, the mere fact that the defendant was in possession of a single $20 bill cannot be considered indicative of an intent to sell.
Accordingly, we conclude that the rational inferences which can be drawn from the evidence presented at trial do not support the conclusion that the defendant intended to sell the packets of cocaine which were found in his possession. Thus, his conviction of criminal sale of a controlled substance in the third degree was against the weight of the credible evidence, and must be vacated.
Nonetheless, the evidence demonstrates beyond a reasonable doubt that the defendant knowingly and unlawfully possessed cocaine, so as to support a conviction of the offense of criminal possession of a controlled substance in the seventh degree (see Penal Law § 220.03). Accordingly, we modify the judgment by reducing the conviction of criminal possession of a controlled substance in the third degree to criminal possession of a controlled substance in the seventh degree (see CPL 470.15 [2] [a]; People v Smith, 74 AD3d 1249, 1250 [2010]; People v Cotton, 226 AD2d 738 [1996]). Since the defendant has already served the maximum permissible sentence that could have been imposed upon a conviction of criminal possession of a controlled substance in the seventh degree (see Penal Law §§ 70.15 [1]; 220.03; People v Nunez, 127 AD2d 801 [1987]), the matter must be remitted to the Supreme Court, Queens County, for the imposition of a sentence of time served on the conviction of that offense (see generally People v Ju Ju Jiang, 99 AD3d 724, 725 [2012]; People v Seymour, 77 AD3d 976, 980 [2010]). Eng, P.J., Sgroi and Miller, JJ., concur.
Dillon, J., dissents, and votes, upon remittitur from the Court of Appeals, to affirm the judgment, with the following memorandum: I respectfully dissent, as I believe that the defendant’s *1026 conviction of criminal possession of a controlled substance in the third degree is not against the weight of the evidence (see Penal Law § 470.15 [5]).
If a finding in favor of a defendant would not be unreasonable, an appellate court must weigh conflicting testimony, review any rational inferences that may be drawn from the evidence, and evaluate the strength of such conclusions, and then decide, based of the weight of the credible evidence, whether the jury’s verdict was justified (see People v Danielson, 9 NY3d 342, 348 [2007]; People v Romero, 7 NY3d 633, 645-646 [2006]). Here, although an acquittal on the charge would not have been unreasonable, the credible evidence and the relative strength of conflicting inferences should permit the jury’s verdict to stand. The defendant’s acquittal of the charge of criminal sale of a controlled substance in the third degree does not necessarily render the defendant’s conviction of criminal possession of a controlled substance in the third degree, based on an intent to sell, against the weight of the evidence (see People v Miller, 282 AD2d 550, 551 [2001]; People v Rivera, 304 AD2d 329, 330 [2003]). The defendant was found in possession of four “branded” packets of cocaine in an area where a trial witness had purchased an identically branded $20-packet of cocaine earlier in the day. New York City Police Department Detective Richard Griffin testified for the prosecution that street-level sales often involve one to five bags of cocaine in units costing $20 each. Moreover, the defendant was found in possession of $20 at the time of his arrest. This evidence permitted the jury to reasonably infer that the defendant’s intent was to sell his packets of cocaine in violation of Penal Law § 220.16 (1), even though the defendant was acquitted of actually selling cocaine to any particular person in violation of Penal Law § 220.39.