People v Quinn (2022 NY Slip Op 06651)

People v Quinn

2022 NY Slip Op 06651

Decided on November 23, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 23, 2022

110387 113191
[*1]The People of the State of New York, Respondent,
v
Richard Quinn, Appellant.

Calendar Date:October 11, 2022

Before:Garry, P.J., Clark, Aarons, Pritzker and Fisher, JJ.

Paul J. Connolly, Delmar, for appellant.
P. David Soares, District Attorney, Albany (Emily Schultz of counsel), for respondent.

Pritzker, J.
Appeals (1) from a judgment of the County Court of Albany County (William A. Carter, J.), rendered April 9, 2018, upon a verdict convicting defendant of the crime of murder in the second degree, and (2) by permission, from an order of the Supreme Court (Roger D. McDonough, J.), entered November 12, 2021 in Albany County, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.
In June 2017, defendant was charged by indictment with murder in the second degree based upon allegations that he stabbed the victim in the City of Albany, with the intent to kill him. After a jury trial, defendant was convicted as charged. Prior to sentencing, defendant moved to set aside the verdict, which motion County Court denied, after a hearing. Defendant was thereafter sentenced to a prison term of 25 years to life. Defendant subsequently moved to set aside the judgment of conviction pursuant to CPL 440.10 (1) based upon allegedly improper conduct of the judge presiding over defendant's case. Supreme Court denied the motion without a hearing. Defendant appeals from the judgment of conviction and, by permission, from the denial of his CPL article 440 motion.
Defendant argues that the verdict is based on legally insufficient evidence and is against the weight of the evidence. These argument are devoid of merit and warrant little discussion. "To establish murder in the second degree as charged in the indictment, the People were required to prove that defendant, with intent to cause the death of another person, caused the death of such person or of a third person" (People v Slivienski, 204 AD3d 1228, 1229-1230 [3d Dept 2022] [internal quotation marks, brackets, ellipses and citation omitted], lv denied 38 NY3d 1136 [2022]; see Penal Law § 125.25 [1]). At trial, two witnesses testified that they observed defendant stab the victim and explained that, at the time, he was wearing a black poncho and a skull cap or turban. Although they did not identify him in court, several other witnesses testified that they observed a man wearing a black poncho and skull cap or turban stab the victim. Testimony established that defendant stabbed the victim multiple times in the chest and heart area before leaving the scene. These stab wounds resulted in the victim's death. Video footage from various security cameras in the area show a man, dressed in a black poncho and skull cap, in the area where the incident occurred just prior to the stabbing and walking away shortly afterward. The jury was shown the surveillance video and had the opportunity to view defendant to determine whether this was the same person. "Based on the foregoing, when construing the evidence in the light most favorable to the People as we must, a rational person could conclude that the [stabber's] identity was sufficiently proven to be defendant" (People v Slivienski, 204 AD3d at 1234 [citation omitted]; see People v Sweet, 200 AD3d 1315, 1315-1316 [3d Dept 2021[*2]], lv denied 38 NY3d 930 [2022]). As to the weight of the evidence, although a different verdict would not have been unreasonable given inconsistencies in the witnesses' testimony and lack of physical evidence, "when viewing all of the evidence in a neutral light and deferring to the jury's credibility determinations, we find that the weight of the credible evidence supports the conclusion" that defendant was the stabber (People v Slivienski, 204 AD3d at 1235 [citations omitted]; see People v Ashe, 208 AD3d 1500, 1505 [3d Dept 2022]).
Defendant also contends that County Court erred by denying his motion to preclude the People from admitting recordings of his calls from jail to family and friends on the basis of due process and equal protection.[FN1] We turn first to defendant's due process claim. NY Constitution, article I, § 6 and US Constitution, 14th Amendment, § 1 each provide that a person may not be deprived of life, liberty or property without due process of law (see People v David W., 95 NY2d 130, 136 [2000]). A "[s]ubstantive due process analysis must begin with a careful description of the asserted right" (Reno v Flores, 507 US 292, 302 [1993] [internal quotation marks and citation omitted]). To that end, defendant generically sets forth several "rights" which he asserts are fundamental and violated by the correction facility's sharing of defendant's nonprivileged recorded calls with the People. These asserted rights include the right to a "fair trial" and a "fundamental due process right to prepare for trial and to defend himself with the assistance of counsel."[FN2] Although impairment of these generic fundamental rights may trigger strict scrutiny, this is not really what plagues defendant. Indeed, defendant does not set forth how his right to a fair trial was actually impaired, and the record fails to reveal same. Rather, defendant is arguing that making admissions to family and friends with impunity is a fundamental right — clearly, it is not (see Washington v Glucksberg, 521 US 702, 721 [1997]; People v Knox, 12 NY3d 60, 67 [2009], cert denied 558 US 1011 [2009]).
Because defendant failed to assert the violation of a fundamental right, the dissemination of his nonprivileged recorded phone calls must only be "rationally related to any conceivable legitimate State purpose" (People ex rel. Johnson v Superintendent, Adirondack Corr. Facility, 36 NY3d 187, 202 [2020] [internal quotation marks and citations omitted]). To that end, it is a fundamental principle of criminal procedure that, to be convicted of a crime, the People bear the burden of proving, beyond a reasonable doubt, that a defendant committed the crime for which he or she has been charged (see Matter of Winship, 397 US 358, 362-364 [1970]). To meet this burden, they must rely on evidence gathered by law enforcement, such as defendant's nonprivileged phone calls. Defendant does not dispute that he was aware that his phone calls were being monitored and recorded, thus he had no "[*3]reasonable expectation of privacy in the content of those phone calls . . ., and there is no legitimate reason to think that [these] recordings, like any other evidence lawfully discovered, would not be admissible" (People v Diaz, 33 NY3d 92, 100 [2019] [internal quotation marks and citation omitted], cert denied ___ US ___, 140 S Ct 394 [2019]). Accordingly, we find that the dissemination of defendant's nonprivileged recorded jail phone calls is rationally related to the State's discharging of its duty to prosecute criminal defendants.
This holding is consistent with those of the First and Second Departments (see People v Utley, 170 AD3d 757, 758 [2d Dept 2019], lv denied 33 NY3d 1074 [2019]; People v Cisse, 149 AD3d 435, 436 [1st Dept 2017], affd 32 NY3d 1198 [2019], cert denied ___ US ___, 140 S Ct 83 [2019]). The First Department has held that "[t]he admission of incriminating, nonprivileged phone calls that [a] defendant [chooses] to make while incarcerated, after receiving multiple forms of notice that [the defendant's] calls may be monitored and recorded, [does] not violate . . . [the] defendant's . . . due process right to participate in the preparation of his [or her] own defense" (People v Cisse, 149 AD3d at 436). The First Department reasoned that, as here, a "[d]efendant [is] free to make privileged calls to his [or her] attorney on all aspects of his [or her] case" and "to limit his [or her] social calls to matters unrelated to his [or her] case," but nonetheless may "cho[o]se to assume the risks involved in making unprotected case-related communications" (id.).
Likewise, defendant's equal protection claim must also fail. "Where governmental action disadvantages a suspect class or burdens a fundamental right, the conduct must be subjected to strict scrutiny, and will be upheld only if the government can establish a compelling justification for the action. . . . Where[, however,] a suspect class or fundamental right is not implicated, the government action need only be rationally related to a legitimate governmental purpose" (People v Aviles, 28 NY3d 497, 502 [2016] [internal quotation marks and citations omitted]; see Alevy v Downstate Med. Ctr. of State of N.Y., 39 NY2d 326, 332-333 [1976]). Here, defendant posits a compelling arbitrary distinction between wealthy and indigent criminal defendants. The latter are often subject to pretrial detention as they are not able to post bail and are thus subjected to recorded jailhouse telephone calls while, largely, wealthy criminal defendants are not. However, the Supreme Court of the United States has consistently held that "[p]overty, standing alone[,] is not a suspect classification" (Harris v McRae, 448 US 297, 323 [1980]; see Kadrmas v Dickinson Pub. Schools, 487 US 450, 458 [1988]; San Antonio Independent School Dist. v Rodriguez, 411 US 1, 29 [1973]). Therefore, "since none of the classifications are inherently suspect nor do they jeopardize the exercise of a fundamental right, rational [*4]basis review applies" (F.F. v State of New York, 194 AD3d 80, 89 [3d Dept 2021], appeal dismissed and lv denied 37 NY3d 1040 [2021], cert denied ___ US ___, 142 S Ct 2738 [2022]), and, as previously discussed, we find that the dissemination of defendant's nonprivileged recorded jail calls survives rational basis review. Accordingly, County Court properly denied defendant's motion seeking to preclude these calls.
Defendant also argues that County Court erred by denying his motion seeking to preclude the People from introducing into evidence a knife found on defendant's person at the time of his arrest. "[A] weapon having no probative value or serving no legitimate purpose may not be admitted because it is unduly prejudicial and inflammatory" (People v Martin, 8 AD3d 883, 887 [3d Dept 2004], lv denied 3 NY3d 677 [2004]; see People v Banks, 181 AD3d 973, 976 [3d Dept 2020], lv denied 35 NY3d 1025 [2020]; People v Bass, 277 AD2d 488, 491 [3d Dept 2000], lv denied 96 NY2d 780 [2001]). Therefore, the People must establish a sufficient connection between the weapon, defendant and the crime to warrant its admission as relevant evidence (see People v Mirenda, 23 NY2d 439, 453 [1969]; People v Urbaniak, 70 AD3d 1056, 1056-1057 [2d Dept 2010]; People v Blanchard, 55 AD2d 968, 969 [3d Dept 1977]).
When a weapon appears to a witness to be the same as the weapon being challenged on relevancy grounds, it is generally admissible (see People v Pena, 50 NY2d 400, 408-409 [1980], cert denied 449 US 1087 [1981]; People v Dasch, 79 AD2d 877, 878 [4th Dept 1980]). Here, a witness attested to seeing defendant stabbing the victim with a knife, which reflected a glare of light. Notably, defendant conceded during oral argument that there was a question of fact as to whether the knife had been sharpened to reveal the metal. Also, at the time of his arrest, defendant was wearing a knife in a sheath around his neck. There was testimony from an individual who was incarcerated with defendant that, when defendant described having committed the crime, he made a motion that could be said to resemble the pulling of a knife out of a sheath around his neck. Although the foregoing may not be the strongest nexus between the recovered knife, defendant and the crime, it was nonetheless "sufficient to permit the jury to find, as it apparently did, that the [knife defendant possessed when he was arrested] was the one used in the commission of the crime" (People v Pena, 50 NY2d at 409; see People v Cunningham, 116 AD2d 585, 586 [2d Dept 1986], lv denied 67 NY2d 941 [1986]). Indeed, "[u]ncertainties as to the identification of the [knife] go to its weight, not to its admissibility as evidence" (People v Sandy, 187 AD2d 466, 466 [2d Dept 1992]; see People v Vargas, 125 AD2d 429, 430 [2d Dept 1986], lv denied 69 NY2d 887 [1987]). Thus, County Court properly denied defendant's motion seeking preclusion of the knife.
Defendant also asserts that testimony of four Albany Police Department detectives [*5]regarding their respective administration of photo arrays became improper bolstering when the detectives "specified the number of the photo the witness identified, which number the jury could plainly see was [d]efendant." Although County Court ruled, pretrial, that the People would be permitted to admit foundational testimony regarding the photo arrays, the challenged testimony exceeded that ruling but defendant failed to object, rendering it unpreserved for this Court's review (see generally People v Cirino, 203 AD3d 1661, 1663 [4th Dept 2022], lv denied 38 NY3d 1132 [2022]; People v Bastian, 83 AD3d 1468, 1468-1469 [4th Dept 2011], lv denied 17 NY3d 813 [2011]). We decline defendant's invitation to reverse his conviction based on this issue in the interest of justice.
Defendant next contends that County Court erred in allowing the People to introduce evidence that he sold drugs to a witness. The record reveals that the witness's initial mention was in response to a question posed by defendant's counsel on cross-examination regarding whether the witness had smoked crack earlier on the night of the incident, to which the witness admitted that he had and added that defendant was "the one that copped for [him]." Over defendant's objection, the court allowed the People to make a limited inquiry to ask the witness what that meant. Before they could ask, however, the witness testified, in response to an unrelated question, that he "purchased [crack cocaine] from [defendant]." Despite overruling an objection by defendant, the court provided limiting instructions to the jury on the purpose of the witness's testimony about his purchase of drugs from defendant. To the extent that the court abused its discretion in allowing this fleeting reference of an uncharged crime, "the court's limiting instruction mitigated any prejudice, and any error was harmless in light of the overwhelming evidence of guilt" (People v Hill, 202 AD3d 598, 599 [1st Dept 2022], lv denied 38 NY3d 1033 [2022]; see People v Damon, 200 AD3d 1323, 1326 [3d Dept 2021]).
Defendant also challenges County Court's denial of his CPL 330.30 motion seeking to set aside the verdict based upon his view that a juror's posttrial question to defense counsel revealed her partiality, which amounted to a depravation of his due process right to the presumption of innocence. A court may set aside a verdict if, "during the trial there occurred, out of the presence of the court, improper conduct by a juror, . . . which may have affected a substantial right of the defendant and which was not known to the defendant prior to the rendition of the verdict" (CPL 330.30 [2]). Where, as here, the trial court conducts a hearing on the motion, the defendant bears the burden of proving his or her claim "by a preponderance of the evidence" (CPL 330.40 [2] [g]; see CPL 330.40 [2] [f]). Notably, "not every misstep by a juror rises to the inherently prejudicial level at which reversal is required automatically. Each case [*6]must be examined on its unique facts to determine the nature of the misconduct and the likelihood that prejudice was engendered" (People v Irizarry, 83 NY2d 557, 561 [1994] [internal quotation marks, ellipsis and citations omitted]; see People v Hartle, 159 AD3d 1149, 1154 [3d Dept 2018], lv denied 31 NY3d 1082 [2018]).
Testimony at the hearing on the motion established that defendant's trial counsel and assistant trial counsel, along with the prosecutors who tried defendant's case, discussed the trial with some jurors after the verdict. Defendant's trial counsel testified that, during the conversation, juror No. 3 mentioned "that during the trial she had noticed a number of pens on the defense table and asked [trial counsel] if at any point during the trial [she] was ever afraid to be sitting next to [defendant]." The conversation continued after that until everyone went their separate ways. On cross-examination, trial counsel testified that, although juror No. 3 did not "specifically" state that she "did not give [defendant] the presumption of innocence," the "natural logical conclusion" of such a statement was that "he was going to stab [trial counsel] with the pens during the trial." Defendant's assistant trial counsel generally confirmed this characterization of the statement made by juror No. 3. One of the prosecutors testified that he recalled "a comment about pens on the table and whether [trial counsel] was worried." In her testimony, juror No. 3 denied making any statements to this effect.[FN3] On cross-examination, juror No. 3 attested that "somebody may have asked something about [trial counsel] being fearful" but could not recall any comments regarding pens. Notably, juror No. 3 further averred that she did not consider any evidence of defendant's guilt "that [she] did not learn about in the courtroom" and that she did not "form any opinion regarding . . . defendant's guilt or innocence before [she] began deliberating" but rather "presume[d] him innocent until [she] began deliberating."
Defendant failed to prove by a preponderance of the evidence that the statements made by juror No. 3 constituted misconduct to a level that warrants reversal. "Jurors are presumed to follow the legal instructions they are given" (People v Baker, 14 NY3d 266, 274 [2010] [citations omitted]; see People v Stone, 29 NY3d 166, 171 [2017]), which, here, included instructions about the "fundamental principle" of "the presumption of innocence" that attaches to criminal defendants. Significantly, juror No. 3 attested to following such charge and not forming opinions regarding defendant's guilt or innocence before deliberations. Deferring to the court's determination that juror No. 3 made an "odd" statement after deliberations, it did not rise to the level of impropriety. As defense counsel seemingly conceded during her testimony, defendant's allegations that juror No. 3 presumed his guilt before deliberations requires too many inferences and is therefore too conclusory [*7]and speculative in nature (see generally People v Blunt, 187 AD3d 1646, 1648 [4th Dept 2020], lv denied 36 NY3d 970 [2020]; compare People v Romano, 8 AD3d 503, 504 [2d Dept 2004], lv denied 3 NY3d 711 [2004]). This conclusion is bolstered by the fact that the statement was made after the guilty verdict was rendered, at which point defendant's presumption of innocence had "disappear[ed]" (People v Sutton, 208 AD2d 574, 574 [2d Dept 1994], lv denied 84 NY2d 1016 [1994]; see People v Actie, 215 AD2d 570, 571 [2d Dept 1995], lv denied 86 NY2d 839 [1995]). In view of the foregoing, County Court did not abuse its discretion in denying defendant's CPL 330.30 motion.
Next, we are unpersuaded by defendant's contention that his sentence is harsh and excessive. Although defendant was sentenced to the maximum term, given defendant's significant criminal history, the serious nature of the offense and defendant's lack of remorse, we discern no basis upon which to modify the sentence (see generally People v Khalil, 206 AD3d 1300, 1305-1306 [3d Dept 2022], lv denied 38 NY3d 1188 [2022]; People v Velett, 205 AD3d 1143, 1147 [3d Dept 2022]).
We turn now to defendant's appeal from Supreme Court's denial of his CPL 440.10 motion without a hearing. Specifically, defendant contends that the judgment should be vacated as it was "procured by . . . fraud on the part of" County Court (CPL 440.10 [1] [b]), "[i]mproper and prejudicial conduct [of the court] not appearing in the record" (CPL 440.10 [1] [f]) and "obtained in violation of a right of . . . defendant under the constitution of this state or of the United States" (CPL 440.10 [1] [h]).[FN4] "On a motion to vacate a judgment of conviction under CPL 440.10, a hearing is only required if the submissions show that the nonrecord facts sought to be established are material and would entitle the defendant to relief. Furthermore, a court may deny a vacatur motion without a hearing if it is based on the defendant's self-serving claims that are contradicted by the record or unsupported by any other evidence" (People v Marte-Feliz, 192 AD3d 1397, 1397-1398 [3d Dept 2021] [internal quotation marks, brackets and citations omitted]; see People v Durham, 195 AD3d 1318, 1320 [3d Dept 2021], lv denied 37 NY3d 1160 [2022]).
In support of his motion, defendant submitted a formal written complaint from the Commission on Judicial Conduct that was addressed to the trial judge, charging him with, among other things, "fail[ing] to uphold the integrity and independence of the judiciary" based upon allegations that he called a lieutenant of the Albany County Correctional Facility with "some questions" pertaining to defendant's case regarding "how the inmate calling system operated" and "how inmates are notified that their phone calls are being monitored." The complaint alleged that the lieutenant advised the trial judge that "the [i]nmate [r]ulebook and a pre-recorded message advise inmates that their conversations are recorded prior to each [*8]phone call" and also "played the pre-recorded message for [the trial judge]." The complaint further alleged that, although the trial judge considered that information in deciding defendant's motion in limine seeking to preclude the jail calls, the trial judge did not disclose his ex parte communications with the parties. Defendant also submitted the trial judge's answer to that complaint, in which he admitted to "consider[ing] the information provided to him by [the lieutenant] in the sense that it confirmed the same information provided to him by the prosecution and the defense attorney, both of whom had spoken to [the lieutenant] before oral argument and both of whom appeared to agree with [the lieutenant's] description of the procedures
. . . for handling [incarcerated individuals'] phone calls," and "inadvertently engag[ing] in an improper ex parte communication with [the lieutenant]."
Defendant failed to establish that the trial judge's misconduct prejudiced him in a meaningful way. Significantly, the information that the trial judge learned through improper conduct was largely undisputed. Indeed, defendant and the People set forth in their motion papers, in sum and substance, the same information the trial judge learned from the lieutenant. Moreover, the true issue for the trial judge to determine on the motion was not whether defendant's calls were properly recorded or the manner in which he was notified of said recording, but rather the impact on defendant's rights of these nonprivileged recordings being freely given to the People. Accordingly, although the trial judge's conduct was no doubt improper, defendant's assertions as to how it prejudiced him are "unsubstantiated and conclusory" (People v Gilmore, 200 AD3d 1184, 1194 [3d Dept 2021] [citations omitted], lv denied 38 NY3d 927 [2022]; see generally People v Provencher, 72 AD3d 1124, 1126 [3d Dept 2010]). Based on the foregoing, Supreme Court did not abuse its discretion in summarily denying defendant's CPL 440.10 motion.
Garry, P.J., Clark, Aarons and Fisher, JJ., concur.
ORDERED that the judgment and the order are affirmed.

Footnotes

Footnote 1: Defendant also argues that the admission of his jail call recordings violate his Fourth Amendment rights; however, such claim is unpreserved as defendant is raising it for the first time on appeal (see People v Seecoomer, 174 AD3d 1154, 1156 n [3d Dept 2019], lv denied 34 NY3d 1019 [2019]).

Footnote 2: The Court of Appeals, in People v Johnson (27 NY3d 199, 206 [2016]), held that the prosecution's use of the defendant's jail calls did not violate his Sixth Amendment right to counsel.

Footnote 3: As the People remark in their brief, it is notable that County Court allowed testimony by juror No. 3 despite the longstanding rule that, generally, "jurors may not impeach their own duly rendered verdict by statements or testimony averring their own misconduct within or without the juryroom" (People v De Lucia, 15 NY2d 294, 296 [1965], cert denied 382 US 821 [1965]; see People v Maragh, 94 NY2d 569, 573 [2000]).

Footnote 4: In his motion, defendant failed to set forth what CPL 440.10 grounds under which he was seeking relief. Supreme Court determined that the theories set forth by defendant were that of "duress, misrepresentation or fraud" (CPL 440.10 [1] [b]) and newly discovered evidence (CPL 440.10 [1] [g]).