People v Jones (2023 NY Slip Op 06007)

People v Jones

2023 NY Slip Op 06007

Decided on November 22, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 22, 2023

113585
[*1]The People of the State of New York, Respondent,
v
D'Andre Jones, Appellant.

Calendar Date:October 19, 2023

Before:Lynch, J.P., Aarons, Pritzker, McShan and Mackey, JJ.

Hug Law, PLLC, Albany (Matthew C. Hug of counsel), for appellant.
Mary Pat Donnelly, District Attorney, Troy (George J. Hoffman Jr. of counsel), for respondent.

Aarons, J.
Appeal from a judgment of the County Court of Rensselaer County (Jennifer G. Sober, J.), rendered December 9, 2021, upon a verdict convicting defendant of the crime of manslaughter in the first degree.
Surveillance video depicted a driver exiting a vehicle and shooting the victim. Defendant was ultimately apprehended after a car chase and, in connection with this shooting, he was charged by indictment with murder in the second degree and manslaughter in the first degree. Following a jury trial, defendant was convicted of manslaughter in the first degree. County Court sentenced defendant to a prison term of 20 years, to be followed by five years of postrelease supervision. Defendant appeals. We reverse.
Defendant maintains that the People did not tender legally sufficient evidence establishing his identity as the shooter.[FN1] At trial, the People admitted into evidence a surveillance video showing a vehicle stopping and the driver, who was wearing a dark-colored top and what appeared to be light-colored pants, exiting and then shooting the victim. The video also depicted the shooter returning to the driver seat of the vehicle and then the vehicle fleeing the scene. A police officer testified that he chased the vehicle until it stopped. The police officer exited his car and initially approached the vehicle from the driver side. He explained that he then "crossed over" and that he was on the passenger side "pretty quickly after [he] got out of the car." The police officer ordered the occupants of the vehicle to exit it. The police officer said that both doors on the passenger side opened and that three individuals exited the vehicle — two from the rear passenger side door and one from the front passenger side door. The police officer focused on the passenger side of the vehicle because he believed there was a gun inside the vehicle and was concerned for his safety. The police officer also testified that he did not see either of the driver side doors open and that he did not see anyone exit from any of those doors.
An evidence technician and another responding officer, both of whom arrived where the vehicle had stopped and after the three other occupants had already exited, searched the area by the vehicle and discovered defendant lying in the grass about 10 to 15 feet in front of the vehicle. Another police officer testified that, when defendant was being processed at the police station, defendant was wearing a black hooded sweatshirt and gray camouflage-style pants.[FN2] A sergeant who reviewed enhanced surveillance video of the area where the victim was shot testified that the clothes of the shooter — a dark top and a light-colored bottom — were consistent with defendant's clothes. Viewing the evidence, particularly the video, the photographs of defendant's clothes and the sergeant's testimony, in the light most favorable to the People, a valid line of reasoning exists such that a rational juror could have concluded that defendant was the shooter (see [*2]People v Scott, 219 AD3d 1572, 1575 [3d Dept 2023]; People v Malloy, 166 AD3d 1302, 1307 [3d Dept 2018], affd 33 NY3d 1078 [2019]; People v Burton, 213 AD2d 732, 733-734 [3d Dept 1995], lv denied 85 NY2d 970 [1995]; see generally People v Castillo, 47 NY2d 270, 277-278 [1979]). As such, legally sufficient evidence supports the jury's finding that defendant was the shooter.
Defendant alternatively maintains that the verdict is against the weight of the evidence on the issue of identity. The power of a reviewing court to determine whether a conviction is supported by the weight of the evidence "requires the court to affirmatively review the record[,] independently assess all of the proof[,] substitute its own credibility determinations for those made by the jury in an appropriate case[,] determine whether the verdict was factually correct[ ] and acquit a defendant if the court is not convinced that the jury was justified in finding that guilt was proven beyond a reasonable doubt" (People v Delamota, 18 NY3d 107, 116-117 [2011]). That said, a contrary result would not have been unreasonable given the absence of direct evidence identifying defendant as the shooter and the lack of forensic evidence connecting defendant to the gun or the interior of the vehicle at issue (see People v Truitt, 213 AD3d 1145, 1149 [3d Dept 2023], lv denied 39 NY3d 1144 [2023]; People v Calafell, 211 AD3d 1114, 1117 [3d Dept 2022], lv denied 39 NY3d 1077 [2023]; People v Malloy, 166 AD3d at 1307). Nevertheless, upon viewing the evidence in a neutral light and weighing the relative probative force of conflicting evidence and the strength of conflicting inferences to be drawn from the evidence, the verdict is against the weight of the evidence (see People v Hawkins, 196 AD3d 505, 507 [2d Dept 2021], lv denied 37 NY3d 1027 [2021]).
There is no dispute that the driver of the vehicle was the shooter and that defendant was an occupant in that vehicle. According to defendant, however, the circumstantial proof fails to exclude beyond a reasonable doubt the possibility that one of the other occupants discovered at the end of the car chase was the driver. To support the theory that defendant was the driver, the People, in part, relied on the fact that defendant was discovered lying on the ground in front of the vehicle. To that end, the People posited that defendant must have exited from the driver side of the vehicle following the car chase. Although this conclusion could be inferred from the evidence, a different conclusion could equally be inferred. In this regard, the police officer who initially responded to the scene testified that he did not see any person exit from either door on the driver side of the vehicle nor did he see either of those doors open. Rather, the police officer only saw three individuals — none of whom was defendant — exit from the passenger side of the vehicle. Furthermore, the photographic evidence discloses that the driver side doors were closed and, after [*3]the vehicle was towed, brush from the area where the vehicle stopped was found only on the inside of the passenger side. From this, a jury could infer that the driver side doors never opened after the car chase. In addition, no witness testified as to seeing defendant exit the vehicle, and it appears that the police officer missed defendant. He nonetheless must have exited the vehicle in some manner. With the proof that both driver side doors were closed and the police officer's testimony that he did not see anyone exit from the driver side, the inference that could be strongly drawn is that defendant exited from the passenger side and, therefore, was not the driver.
The People also point to the surveillance video and the enhanced photographs depicting defendant's clothing. It is true that a sergeant testified that the clothing worn by defendant was consistent with the shooter's clothes as shown on the video and photographs. His conclusion, however, was based almost entirely on his review of the video and photographs. This evidence, when viewed in a neutral light, does not conclusively show that the shooter's clothes were the same as the clothes that defendant wore. Indeed, defendant and another occupant of the vehicle both wore hooded sweatshirts identical in color. Although defendant and the other occupant wore slightly different colored pants, they were both camouflage in style. Furthermore, the enhanced photographs depicting the shooter were pixelated, and the shade and color of the pants of the shooter cannot be easily discerned from these photographs. As such, the photographs do little to show that the pants worn by defendant were the same pants worn by the shooter.
"[A]s an implicit but necessary element of each and every crime, the People must prove beyond a reasonable doubt the identity of the defendant as the person who committed the crime" (People v Taylor, 196 AD3d 851, 853 [3d Dept 2021] [internal quotation marks, brackets, ellipsis and citation omitted], lv denied 37 NY3d 1030 [2021]). Viewing the evidence in a neutral light, the People failed to prove beyond a reasonable doubt that defendant was the shooter. The conviction must therefore be reversed as the verdict is against the weight of the evidence (see People v Graham, 107 AD3d 1296, 1298 [3d Dept 2013]; People v St. Andrews, 82 AD3d 1356, 1358 [3d Dept 2011]; People v Chase, 60 AD3d 1077, 1079 [2d Dept 2009]; People v McCoy, 266 AD2d 589, 592 [3d Dept 1999], lv denied 94 NY2d 905 [2000]). Based on this determination, defendant's remaining assertions are academic.
Lynch, J.P., Pritzker, McShan and Mackey, JJ., concur.
ORDERED that the judgment is reversed, on the facts, and indictment dismissed.

Footnotes

Footnote 1: Defendant also argues that the verdict is not based on legally sufficient evidence due to the People's failure to show that he intended to cause serious physical injury. This argument, however, is unpreserved (see People v Thomas, 215 AD3d 1052, 1053 [3d Dept 2023], lv denied 40 NY3d 931 [2023]).

Footnote 2: A photograph depicting the camouflage pants worn by defendant was admitted into evidence.