People v Montgomery (2024 NY Slip Op 03781)

People v Montgomery

2024 NY Slip Op 03781

Decided on July 11, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 11, 2024

112322
[*1]The People of the State of New York, Respondent,
v
Daquin Montgomery, Appellant.

Calendar Date:May 31, 2024

Before:Egan Jr., J.P., Reynolds Fitzgerald, Ceresia, Fisher and Mackey, JJ.

Stephen W. Herrick, Public Defender, Albany (James A. Bartosik Jr. of counsel), for appellant.
P. David Soares, District Attorney, Albany (Christopher D. Horn of counsel), for respondent.

Mackey, J.
Appeal from a judgment of the County Court of Albany County (William A. Carter, J.), rendered November 14, 2019, upon a verdict convicting defendant of the crimes of robbery in the first degree (four counts) and burglary in the first degree (two counts).
On October 8, 2018, law enforcement officials were dispatched to an apartment building located at 527 Washington Avenue in the City of Albany after receiving a call about an armed robbery that had taken place. There were six victims who reported that three men committed the robbery. While the victims were speaking to the police, an employee at the Capital Region Crime Analysis Center ran a global positioning system (hereinafter GPS) search to see if any paroled individuals were in the area of 527 Washington Avenue when the robbery occurred. The search involved checking the GPS locations of parolees' ankle monitoring bracelets, which the Crime Analysis Center had access to through the Department of Corrections and Community Supervision. That search linked defendant to the time and area of the robbery and revealed that he had since returned to his address at 230 Green Street. This information was relayed to law enforcement officials on the scene, who went to defendant's address and took him into custody.
Defendant was taken to the police station where he was interviewed about his involvement with the robbery. During the interview, a gold chain and watch were collected from defendant and later confirmed to be property stolen from the victims of the robbery. Law enforcement officials then obtained and executed a search warrant for defendant's apartment, where they recovered defendant's cell phone and a ski mask. Defendant and his codefendant, Marcelle Chandler, were jointly indicted and charged with four counts of robbery in the first degree (see Penal Law § 160.15 [4]) and two counts of burglary in the first degree (see Penal Law § 140.30 [4]). The codefendant pleaded guilty, while defendant rejected a similar plea offer. Prior to trial, defendant moved to suppress the evidence obtained as a result of his arrest, statements he made to the police and evidence obtained as a result of the search warrant. After a suppression hearing, County Court ruled that none of the evidence would be suppressed at trial. After a four-day jury trial, defendant was convicted as charged. Defendant was then sentenced, as a second violent felony offender, to six concurrent prison terms of 25 years, to be followed by five years of postrelease supervision. Defendant appeals.
Defendant contends that the verdict is based on evidence that is legally insufficient and the verdict is against the weight of the evidence because the People did not establish his identity as one of the perpetrators. "In conducting a legal sufficiency analysis, this Court views the evidence in the light most favorable to the People and evaluates whether there is any valid line of reasoning and permissible inferences which could lead a rational person [*2]to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crimes charged" (People v Lall, 223 AD3d 1098, 1100 [3d Dept 2024] [internal quotation marks, brackets and citations omitted], lv denied 41 NY3d 984 [2024]; see People v Agan, 207 AD3d 861, 862 [3d Dept 2022], lvs denied 38 NY3d 1186 [2022], 39 NY3d 939 [2022]; People v Warner, 194 AD3d 1098, 1099 [3d Dept 2021], lv denied 37 NY3d 1030 [2021]). "When undertaking a weight of the evidence review, this Court must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and, if not, then it must weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence. When conducting this review, this Court considers the evidence in a neutral light and defers to the jury's credibility assessments" (People v Moore, 223 AD3d 1085, 1086-1087 [3d Dept 2024] [internal quotation marks, brackets and citations omitted], lv denied ___ NY3d ___ [May 31, 2024]; see People v Oates, 222 AD3d 1271, 1272 [3d Dept 2023]; People v Munise, 222 AD3d 1183, 1184 [3d Dept 2023]).
As relevant here, "[a] person is guilty of robbery in the first degree when he [or she] forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he [or she] or another participant in the crime . . . [d]isplays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm" (Penal Law § 160.15 [4]; see People v Shabazz, 211 AD3d 1093, 1095 [3d Dept 2022], lv denied 39 NY3d 1113 [2023]; People v Gilley, 163 AD3d 1156, 1157 [3d Dept 2018], lv denied 33 NY3d 948 [2019]). "A person is guilty of burglary in the first degree when he [or she] knowingly enters or remains unlawfully in a dwelling with intent to commit a crime therein, and when, in effecting entry or while in the dwelling or in immediate flight therefrom, he [or she] or another participant in the crime . . . [d]isplays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm" (Penal Law § 140.30 [4]; see People v Shabazz, 211 AD3d at 1095; People v Willard, 159 AD3d 1228, 1229 [3d Dept 2018], lv denied 31 NY3d 1154 [2018]). "As an implicit but necessary element of each and every crime, the People must prove beyond a reasonable doubt the identity of the defendant as the person who committed the crime" (People v Jones, 221 AD3d 1285, 1288 [3d Dept 2023] [internal quotation marks, brackets and citations omitted]; see People v Scott, 219 AD3d 1572, 1573-1574 [3d Dept 2023]; People v Davis, 200 AD3d 1200, 1201 [3d Dept 2021]).
Six victims, all of whom were college students at the time, testified at trial about their experiences during the robbery. Five of them were roommates and [*3]residents of 527 Washington Avenue and one was a friend who was visiting at the time. The apartment consisted of two stories. Four of the victims were playing video games together in one of the downstairs bedrooms while a fifth victim was in his upstairs bedroom alone. The sixth victim was not home at the time of the robbery, but testified at trial about his belongings that were stolen. The four individuals in the downstairs bedroom were Ruben Raju, Joshua Rayappa, Timothy Koki and Hochy Rodriguez.
Each of them testified that at approximately 8:00 p.m., three men came into the bedroom holding firearms. After ordering everyone to the ground, the men asked the victims for their marihuana and stole a necklace chain from Raju. Two of the men then took Rodriquez upstairs at gunpoint while the third man stayed in the bedroom with the rest of the victims. Once upstairs, the men took Rodriguez into his bedroom and stole some of his personal belongings, including his laptop, sneakers and $350. The men then forced Rodriguez to lie on the floor while they went through the other upstairs bedrooms. While searching the other upstairs bedrooms, the men discovered Lexus Abreu, the roommate who had been upstairs in his bedroom while the others played video games. The men then forced Abreu to lie on the floor and stole his cell phone. Rodriguez and Abreu continued to lie on the floor upstairs while the two men returned to the downstairs bedroom, where they stole a laptop, video games and the other victims' cell phones. After gathering the personal belongings in a trash bag, all three men left the building. According to the victims' testimony, the entire robbery lasted somewhere between 10 and 30 minutes. After the men left, Raju, the only victim whose phone was not stolen, sent a text message to his girlfriend and asked her to call the police, who arrived approximately 10 minutes later.

After learning that the police had been dispatched to respond to a robbery, Andrew Munson, a senior crime analyst with the Capital Region Crime Analysis Center, checked GPS data for ankle monitoring sites in the area and learned that defendant's ankle monitor was near the scene of the crime while the robbery was taking place.[FN1] An employee at Securus, the company that operates the GPS system that the ankle monitor uses, provided testimony about that system, which is called Veritracks. The employee stated that Veritracks GPS information is accurate within about 50 feet and that the ankle monitor attempts to collect a GPS point every minute. Munson testified that the GPS data reflected that defendant arrived in the area of 527 Washington Avenue at 7:42 p.m. and stayed for approximately 15 minutes. He then traveled to 615 Myrtle Avenue, an address associated with the codefendant. After about five minutes, defendant returned to 527 Washington Avenue, where he stayed until about 8:30 p.m. Munson relayed the above information to Lawrence Heid, the lead police officer on the case, and also [*4]informed him that GPS data was then reflecting that defendant had returned to his address at 230 Green Street. Munson also testified that a nearby license plate reader revealed that a car registered to the codefendant was in the area at the time of the robbery.
After getting the GPS information from Munson, Heid dispatched a group of officers to defendant's address. Those officers responded to defendant's address, handcuffed him and brought him to the police station. At the station, defendant's watch and necklace chain were removed, and were later identified as stolen property of the victims. While defendant was being interviewed, the police executed a search warrant at defendant's apartment and recovered defendant's cell phone and a blue ski mask. During defendant's interview, he claimed that he was near 527 Washington Avenue for unrelated reasons and denied any involvement in the robbery. He also maintained that the watch and chain that were taken from him were his personal property.
In addition to testifying about the sequence of events during the robbery, the victims also provided testimony at trial describing each of the three men who committed the robbery. The victims each described one of the men as a tall, unmasked Black man with lighter complexion, although they disagreed on the color of his clothing. This man was identified at trial as the codefendant. The victims also described a second Black man who kept a black ski mask on at all times. As with the codefendant, the victims disagreed about the color of the second man's clothing. The third man described by the victims was also Black. The victims testified that this man was slightly under six feet tall, heavier-set and wearing a varsity jacket. However, there was a discrepancy about whether or not this third man was wearing a mask. Koki stated that he was wearing a black mask, Rodriguez stated that he was not wearing a mask and Raju stated that he was wearing a green mask at one point but that he later took it off. Heid confirmed that identification procedures were conducted but no one identified defendant.
Given the foregoing, "when construing the evidence in the light most favorable to the People as we must, a rational person could conclude that the [perpetrator's] identity was sufficiently proven to be defendant" (People v Slivienski, 204 AD3d 1228, 1234 [3d Dept 2022], lv denied 38 NY3d 1136 [2022]; see People v Quinn, 210 AD3d 1284, 1285 [3d Dept 2022], lv denied 39 NY3d 1079 [2023]). To that end, it is undisputed that when the crime was committed, defendant was placed, by means of his ankle monitor, in the vicinity of the burglarized apartment building. He was also found to be in possession of items identified as the stolen property of the victims. As to the weight of the evidence, a different verdict would not have been unreasonable, especially if the jury were persuaded by the fact that defendant was never positively identified by any of the victims (see People v Shabazz, 211 AD3d [*5]at 1098-1099; People v Saunders, 176 AD3d 1384, 1388 [3d Dept 2019], lv denied 35 NY3d 973 [2020]; People v Marryshow, 162 AD3d 1313, 1317 [3d Dept 2018]). However, viewing the evidence in a neutral light, weighing the probative force of the conflicting testimony and considering the relative strength of the inferences to be drawn therefrom, while deferring to the jury's credibility determinations, we are satisfied that the weight of the evidence supports the verdict (see People v Wakefield, 175 AD3d 158, 165 [3d Dept 2019], affd 38 NY3d 367 [2022], cert denied ___ US ___, 143 S Ct 451 [2022]; People v Cloonan, 166 AD3d 1063, 1064-1065 [3d Dept 2018], lv denied 35 NY3d 941 [2020]; People v Wilson, 164 AD3d 1012, 1015 [3d Dept 2018], affd 192 AD3d 1379 [2021]). Thus, the verdict is supported by legally sufficient evidence as well as the weight of the evidence.
Defendant next contends that County Court erred in refusing to suppress all evidence against him because his arrest was based solely on GPS evidence that placed him near the scene of the robbery, which does not rise to the level of probable cause. We conclude that defendant's contention is not preserved for our review inasmuch as he failed to raise it before the suppression court (see People v Cruz, 137 AD3d 1158, 1159 [2d Dept 2016], lv denied 28 NY3d 970 [2016]; People v Fulton, 133 AD3d 1194, 1195 [4th Dept 2015], lv denied 26 NY3d 1109 [2016]; People v Rolle, 72 AD3d 1393, 1395 [3d Dept 2010], lv denied 16 NY3d 745 [2011]; see also People v Chambers, 185 AD3d 1141, 1145-1146 [3d Dept 2020], lv denied 36 NY3d 1055 [2021]; People v Seecoomar, 174 AD3d 1154, 1156 n [3d Dept 2019], lv denied 34 NY3d 1019 [2019]).
Contrary to defendant's contention, he did not preserve that issue for our review through either that part of his omnibus motion seeking to suppress the evidence or his posthearing memorandum. A question of law with respect to a ruling of a suppression court is preserved for appeal when "a protest thereto was registered, by the party claiming error, at the time of such ruling . . . or at any subsequent time when the court had an opportunity of effectively changing the same . . . , or if in response to a protest by a party, the court expressly decided the question raised on appeal" (CPL 470.05 [2]; see People v Parker, 32 NY3d 49, 57 [2018]; People v Miranda, 27 NY3d 931, 932 [2016]). In his omnibus motion, defendant solely argued that the GPS search of his ankle monitor was a protected search under the Fourth Amendment. He did not raise his present contention that he was arrested without probable cause. Nor did County Court expressly decide that issue (see People v Parker, 32 NY3d at 57-58; People v Miranda, 27 NY3d at 932-933). We decline to exercise our power to take corrective action as a matter of discretion in the interest of justice (see CPL 470.15 [3] [c]).
Defendant further contends that the search warrant used to access his apartment was insufficient as a matter of law, so [*6]the evidence obtained from it should have been
suppressed. "To establish probable cause for the issuance of a search warrant, the warrant application must demonstrate that there is sufficient information to support a reasonable belief that evidence of a crime may be found in a certain place" (People v Abdullah, 206 AD3d 1340, 1346 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 39 NY3d 939 [2022]; see People v Patterson, 199 AD3d 1072, 1073 [3d Dept 2021], lv denied 37 NY3d 1163 [2022]; People v Jemmott, 164 AD3d 953, 953 [3d Dept 2018], lv denied 32 NY3d 1112 [2018]). "A presumption of validity attaches to a search warrant signed by a magistrate, and a court's determination that there is a probable cause for a search warrant must be afforded great deference" (People v Jemmott, 164 AD3d at 953-954 [internal quotation marks and citations omitted]; see People v Cherry, 149 AD3d 1346, 1347-1348 [3d Dept 2017], lv denied 29 NY3d 1124 [2017]; People v Rogers, 94 AD3d 1246, 1247 [3d Dept 2012], lv denied 19 NY3d 977 [2012]).
Heid testified at the suppression hearing about the search warrant. He stated that he prepared the search warrant application for 230 Green Street, in unit 2B. After preparing the application, Heid presented it to an Albany City Court Judge, who reviewed the application and signed the search warrant. Heid then proceeded to travel with a group of other law enforcement officials to execute the search warrant. The search warrant application recounted the victims' version of the robbery and cited defendant's location outside of 527 Washington Avenue in support of the application. The application also referred to the stolen property that was removed from defendant's possession after his arrest. The search warrant itself authorized the Albany Police Department to search unit 2B of 230 Green Street for the victims' stolen property, handguns and a face mask. Upon searching the property, Heid recovered a ski mask and defendant's cell phone, which displayed a photo of defendant wearing the ski mask on the lock screen.
We find without merit defendant's contention that the search warrant application was insufficient as a matter of law because it relied on hearsay. In our opinion, it is unclear what hearsay defendant is referring to, as he makes only a cursory mention of this in his brief. Regardless, "an affidavit by a police officer which is based upon the observations made by a fellow police officer when the two are engaged in a common investigation furnishes a reliable basis for the warrant" (People v Luciano, 152 AD3d 989, 991 [3d Dept 2017] [internal quotation marks and citations omitted], lv denied 30 NY3d 1020 [2017]; see People v Rivenburgh, 1 AD3d 696, 699 [3d Dept 2003], lv denied 1 NY3d 579 [2003]; see also People v Williams, 187 AD3d 1222, 1224 [2d Dept 2020]). After careful review of the search warrant application, we find it to be legally sufficient to support issuance of the warrant.
Finally, we reject [*7]defendant's contention that the sentence imposed was harsh and excessive. A review of the presentence report reveals that defendant had previously been convicted of two felonies, one of which was a violent felony, making him a second violent felony offender, and that he had also been convicted of a misdemeanor. Defendant committed the instant offense a little over two months after being released from a prison sentence imposed on his conviction of grand larceny. Thus, although defendant indeed received the maximum sentence permissible by statute (see Penal Law §§ 70.02 [1] [a]; 70.04 [1] [a]; [2], [3] [a]), considering his criminal history, and the circumstances surrounding the crime, which involved defendant and the codefendant wielding a gun at six college students while robbing them, we decline to reduce the legal sentence in the interest of justice (see People v Mansfield, 223 AD3d 1111, 1117-1118 [3d Dept 2024]; People v Hunter, 219 AD3d 975, 981 [3d Dept 2023]). Nor is there any evidence in the record to substantiate defendant's contention that the 25-year prison sentence was imposed as a penalty for rejecting a plea offer of 15 years in prison and exercising his right to proceed to a trial (see People v Speed, 134 AD3d 1235, 1236-1237 [3d Dept 2015], lv denied 27 NY3d 1155 [2016]). Defendant's remaining arguments have been considered and found to be lacking in merit.
Egan Jr., J.P., Reynolds Fitzgerald, Ceresia and Fisher, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Defendant's parole officer confirmed that defendant was on parole in October 2018 and that he was required to wear an ankle monitor tracking device as a condition of his parole.