■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VINCENT LIGUORI, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Shea, J.), rendered April 6, 1987, convicting him of robbery in the first degree (two counts), reckless endangerment in the second degree (two counts), and official misconduct, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed, and the matter is remitted to the Supreme Court, Kings County, for further proceedings pursuant to CPL 460.50 (5).

While the complainants Robinson and Moore were in a friend's apartment in Brooklyn, the defendant and his codefendant Ferguson, who were uniformed police officers, knocked on the door and entered with guns drawn. Although they wore police shields, black bands blocked their names and shield numbers from view. The defendant and his codefendant asked the complainants where the drugs were, placed the complainants against a wall, held their guns to the complainants' heads, and searched them. The defendant and his codefendant then searched the apartment and found two machetes underneath a settee which they began to swing near the complainants' bodies. They also used the machetes to chop up the furniture in the apartment. Ferguson took $1,800 of Robinson's money, which was in a brown paper bag, and $220 which Moore had in the pockets of his pants were also taken. A third uniformed officer, Richard Leahy, entered the apartment and saw the defendant and his codefendant swinging the machetes near the complainants but left the apartment shortly thereafter when the defendant and his codefendant told him that everything was under control. No drugs were recovered from the apartment and the complainants were not arrested. The defendant and his codefendant left the apartment after locking the complainants in a bathroom.

Robinson filed a complaint with the 70th Precinct and Officer Leahy reported his observations to the Internal Affairs Office. After Officer Leahy was interviewed by the Special Prosecutor's Office, he received a telephone call at his home from the codefendant Ferguson, who asked him if he had spoken to anyone. When Officer Leahy told him that he had not, Ferguson stated "if anyone approaches you, tell them you saw us in the hallway and that's it". This statement was redacted for trial by substituting the word "me" for "us". At the trial, however, Officer Leahy misspoke and stated that Ferguson had told him that "if anyone approaches you, tell them you saw us, you saw me, if anyone approaches you, tell

them you saw me in the hallway". The trial court provided a curative instruction in accordance with the defense counsel's request, but the defendant's motion for a mistrial was denied.

At a posttrial hearing on the defendant's motion to set aside the verdict, juror number four, who had been excused from the jury following the Judge's charge and prior to the jury's deliberations, testified that he had made an unauthorized visit to the crime scene prior to the trial court's charge to the jury but that he never told any of the other jurors about this visit. The other jurors confirmed that they knew nothing of the visit. Another juror also testified that had he not felt pressured and harassed by the other jurors, he would have voted differently. The trial court denied the defendant's motion to set aside the verdict.

The defendant claims that he is Italian and that the prosecutrix engaged in purposeful discrimination by exercising her peremptory challenges to exclude potential jurors with Italian-sounding surnames. We agree with the trial court that the defendant failed to make a prima facie showing that he was a member of a cognizable racial group or that the prosecutrix exercised peremptory challenges to remove members of his race (see, Batson v Kentucky, 476 US 79, 96; United States v Sgro, 816 F2d 30, cert denied — US —, 108 S Ct 1021; cf., United States v Biaggi, 673 F Supp 96). Even if we were to assume that the rule of Batson v Kentucky (supra) applies to claims of discrimination on nonracial lines, the defendant failed to request an evidentiary hearing on the issue of racial cognizability and further failed to substantiate his claim that the challenged jurors were in fact Italian. Nor did he offer evidence demonstrating the relationship between surnames and ethnicity (United States v Sgro, supra). Furthermore, the jury selected in this case was comprised of a fair cross section of the community and contained individuals with Italian-sounding surnames.

Nor has the defendant met his burden of demonstrating facts and circumstances sufficient to raise an inference that the peremptory challenges were used for discriminatory purposes. The defendant has failed to substantiate his claim of systematic exclusion of Italian-Americans by citing to remarks and questions made by the prosecutrix during voir dire (Batson v Kentucky, supra). In fact, no questions were asked of any potential jurors regarding their ethnic backgrounds. We would also note that it seems illogical to suggest that in a joint trial of 2 defendants of different ethnic backgrounds, a prosecutor

would single out only 1 defendant for allegedly disparate treatment.

Officer Leahy's testimony as to Ferguson's statement over the telephone was effectively redacted to prevent the jury from interpreting it as an admission incriminating the defendant *(see, People v Wheeler,* 62 NY2d 867). Nor did Officer Leahy's inadvertent slip of the tongue materially reduce the effectiveness of the redaction *(see, People v Lopez,* 68 NY2d 683).

The trial court properly exercised its discretion in denying the defendant's motion for a mistrial based upon the outbursts of the complainant Moore in which he pounded his fists and volunteered unresponsive information. Any potential prejudice stemming from the outbursts was dissipated by the trial court's prompt and concise curative instructions to the jury *(see, People v Kennedy,* 27 NY2d 551; *People v Soto,* 133 AD2d 787, *lv denied* 70 NY2d 960; *People v Francis,* 123 AD2d 714).

The unauthorized visit to the crime scene by the nondeliberating juror who did not communicate his findings to the deliberating jurors in no way prejudiced the defendant *(see, People v Brown,* 48 NY2d 388; *cf., People v De Lucia,* 20 NY2d 275; *People v Crimmins,* 26 NY2d 319). Although another deliberating juror stated that he voted guilty only because he capitulated to the pressure placed on him by the other jurors, a jury verdict may not be impeached by statements going to the tenor of the jury's deliberations *(see, People v Brown, supra; People v Maddox,* 139 AD2d 597, *lv denied* 72 NY2d 862; *People v Smalls,* 112 AD2d 173). Therefore, the defendant's motion to set aside the verdict was properly denied *(People v Testa,* 61 NY2d 1008). Bracken, J. P., Eiber, Kooper and Harwood, JJ., concur.