People v Hunter (2023 NY Slip Op 04158)

People v Hunter

2023 NY Slip Op 04158

Decided on August 3, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:August 3, 2023

110950
[*1]The People of the State of New York, Respondent,
v
Noah Hunter, Appellant.

Calendar Date:June 8, 2023

Before:Garry, P.J., Egan Jr., Pritzker, Reynolds Fitzgerald and McShan, JJ.

Law Offices of Elmer Robert Keach, III, PC, Albany (Elmer Robert Keach III of counsel), for appellant.
Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.

Egan Jr., J.
Appeal from a judgment of the County Court of Schenectady County (Mark J. Caruso, J.), rendered October 12, 2017, upon a verdict convicting defendant of the crimes of criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree.
Prior to going out on patrol on July 31, 2015, two City of Schenectady Police Department officers were advised of a "be on the lookout," or BOLO, bulletin for Brandon Greggs, an individual with an active warrant for his arrest who was also a person of interest with regard to possible retaliation for a recent homicide in the city. The officers were on patrol around 4:00 p.m. that day when they spotted Greggs and two other men, including defendant, standing on the front porch of a home on Cutler Street. The officers circled the block and drove by again to find that Greggs and two other men were sitting in a silver or gray Ford Taurus parked in front of the home. The officers circled the block again so that they could pull up behind the vehicle and approach its occupants more safely; by the time they returned, the vehicle was gone.
One of the officers radioed that a person with an active warrant was a passenger in a silver or gray Ford Taurus and provided a license plate number for the vehicle that had one incorrect digit. Approximately a minute and a half later, a police sergeant who was driving in the area was at a nearby intersection when he spotted a gray Ford Taurus with a "very similar" plate number, and he activated his vehicle's emergency lights to effectuate a stop. As he attempted to make the stop, defendant bolted out of the rear passenger door of the Ford Taurus and ran toward an alleyway. The sergeant observed defendant try to pull a Stoeger Industries .380 caliber semi-automatic pistol from his sweatpants pocket, fumble and drop that gun after getting it caught on his sweatpants, and then continue running. The sergeant initially gave chase, but soon returned to secure the handgun on the ground and found that the Ford Taurus and its other occupants were gone.
Defendant was eventually apprehended and, in May 2016, was charged in an indictment with two counts of criminal possession of a weapon in the second degree and one count of criminal possession of a weapon in the third degree. Following an unsuccessful motion by defendant to suppress the handgun recovered from the scene as the product of an illegal stop, the matter proceeded to a jury trial in January 2017. During deliberations, the jury advised that it was having difficulty reaching a verdict, and County Court (Sypniewski, J.) administered an Allen charge. The jury then advised that it had reached a verdict on the second count of the indictment but was unable to reach a verdict on the remaining two counts. County Court accepted a partial verdict in which the jury acquitted defendant of one count of criminal possession of a weapon in the second degree and re-administered an Allen charge, urging the jury to [*2]continue its deliberations on the remaining two counts. Thereafter, the jury sent a note reporting that it remained deadlocked on those two counts and that "[n]o more time to deliberate [would] change the vote." At that point, with the parties' consent, County Court declared a mistrial.
A second trial on the two counts got underway in June 2017. During jury selection, defendant challenged the People's use of peremptory strikes to remove two prospective jurors, one of whom was Black and one of whom was purportedly Hispanic, on Batson grounds (see Batson v Kentucky, 476 US 79 [1986]). County Court (Caruso, J.) rejected those challenges and, at the conclusion of the trial, defendant was convicted of criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree. County Court thereafter declined to grant defendant youthful offender status and sentenced him to 10 years in prison to be followed by five years of postrelease supervision for the second-degree weapon possession conviction, as well as a lesser concurrent term of imprisonment on the third-degree weapon possession conviction. Defendant appeals, and we affirm.
At the outset, we reject defendant's efforts to question the quality of the proof presented against him at the first trial on double jeopardy grounds. It is well established that, "if the defendant requests or consents to a mistrial, double jeopardy will not preclude a retrial . . . unless the defendant can demonstrate prosecutorial or judicial misconduct intended to provoke a mistrial" (People v Ellis, 182 AD3d 791, 792 [3d Dept 2020], lv denied 35 NY3d 1026 [2020]; see People v Casalino, 204 AD3d 1078, 1079 [3d Dept 2022], lv denied 38 NY3d 1070 [2022]; People v Green, 190 AD3d 1094, 1097 [3d Dept 2021], lv denied 36 NY3d 1097 [2021]). After the jury at the first trial advised that it could not reach a verdict on two of the counts against defendant and saw no prospect of doing so, defense counsel "concur[red]" with the proposal of County Court (Sypniewski, J.) to discharge the jury following an on-the-record discussion. Defendant then, after an off-the-record discussion, did not dispute the representation of County Court that "both sides [had] consented" to doing so. As defendant consented to the mistrial, and he makes no effort to argue that the mistrial was provoked by prosecutorial or judicial misconduct, double jeopardy posed no bar to the second trial on the remaining two counts against him. As a consequence, defendant is "foreclosed from questioning the legal sufficiency of the proof presented at the first trial regarding those counts or arguing that the lack thereof functioned as 'an acquittal for purposes of double jeopardy' " (People v Green, 190 AD3d at 1097 n 1, quoting People v Biggs, 1 NY3d 225, 229 [2003]; see People v Haggray, 164 AD3d 1522, 1523 [3d Dept 2018], lv denied 32 NY3d 1111 [2018]; People v Kappen, 142 AD3d 1106, 1107 [2d Dept 2016], lv denied 28 NY3d 1185 [2017[*3]]).
Next, County Court properly declined to suppress the handgun defendant abandoned upon the ground that it was a product of an illegal traffic stop. "Automobile stops are lawful only when based on probable cause that a driver has committed a traffic violation; when based on a reasonable suspicion that the driver or occupants of the vehicle have committed, are committing, or are about to commit a crime; or, when conducted pursuant to nonarbitrary, nondiscriminatory, uniform highway traffic procedures" (People v Hinshaw, 35 NY3d 427, 430 [2020] [internal quotation marks and citations omitted]; see People v Balkman, 35 NY3d 556, 559 [2020]; People v Spencer, 84 NY2d 749, 753 [1995]). The suppression hearing included testimony from, among others, the two officers who initially spotted Greggs and the sergeant who stopped the Ford Taurus. The two officers on patrol testified as to how they were aware that a BOLO bulletin had been issued regarding Greggs and that he had an active warrant for his arrest, as well as how they spotted him and then saw him sitting in the Ford Taurus. The officers further described how, after they returned to find the Ford Taurus gone, they radioed out the description of the vehicle and the fact that a passenger in the vehicle had an active warrant for his arrest. The sergeant testified as to how he heard that radio report and how, when he was a few blocks away a minute or two later, he saw a Ford Taurus similar to the description provided and stopped it. Defendant then got out of the vehicle, pulled the handgun and fumbled it to the ground before running away. Deferring to the implicit assessment of both the judicial hearing officer who conducted the hearing and County Court that the foregoing testimony was credible — and noting that the sergeant was "entitled to act on the strength of a radio bulletin . . . from a fellow officer or department and to assume its reliability" (People v Lypka, 36 NY2d 210, 213 [1975]; accord People v Cuevas, 140 AD3d 1313, 1314 [3d Dept 2016]) — we are satisfied that the People established that the sergeant had a reasonable suspicion "that an occupant of [the Ford Taurus] had committed a crime to justify the" stop (People v Houghtalen, 89 AD3d 1163, 1165 [3d Dept 2011]). It follows that defendant's motion to suppress the handgun that he abandoned in the aftermath of that stop was properly denied.
We are unpersuaded by defendant's further contention that County Court (Caruso, J.) erred in rejecting his Batson challenges to the People's use of peremptory strikes to potential jurors at his second trial. A Batson challenge requires the trial court to engage in a three-step process. "At step one, the movant must make a prima facie showing that the peremptory strike was used to discriminate; at step two, if that showing is made, the burden shifts to the opposing party to articulate a non-discriminatory reason for striking the juror; and finally, at step three, the trial court must determine, based [*4]on the arguments presented by the parties, whether the proffered reason for the peremptory strike was pretextual and whether the movant has shown purposeful discrimination" (People v Bridgeforth, 28 NY3d 567, 571 [2016] [citation omitted]; see People v Hecker, 15 NY3d 625, 634-635 [2010]; People v Williams, 177 AD3d 1178, 1179-1180 [3d Dept 2019], lv denied 34 NY3d 1164 [2020]; People v May, 173 AD3d 1435, 1435 [3d Dept 2019]). Of special importance here, although "a prima facie showing of discrimination [that satisfies the first step] may be made based on the peremptory challenge of a single juror that gives rise to an inference of discrimination, a defendant retains the obligation to articulate a sound factual basis for the claim during the Batson colloquy" to meet his or her initial burden (People v Henderson, 305 AD2d 940, 940 [3d Dept 2003] [internal quotation marks, brackets and citations omitted], lv denied 100 NY2d 582 [2003]; see People v Anthony, 152 AD3d 1048, 1050 [3d Dept 2017], lv denied 30 NY3d 978 [2017]).
With that framework in mind, defendant is a Black male and, after the first of two prospective jurors who were Black males was seated on the jury, the People used a peremptory challenge to strike the second. Defendant requested, without elaboration, that the People provide a basis for the challenge. After County Court clarified that defendant was making a Batson claim and requested that the People explain why the prospective juror was being challenged, the prosecutor argued that one Black juror had already been seated and that defendant had not demonstrated a pattern of discrimination. The prosecutor nevertheless explained that he was exercising the peremptory challenge because he was concerned that the prospective juror, a high school drop out, would have difficulty understanding complicated testimony regarding "DNA mixture interpretation evidence generated by the TrueAllele Casework System" that the People intended to offer at trial (People v Wakefield, 38 NY3d 367, 371 [2022]). County Court rejected defendant's challenge upon the ground that he had not made a prima facie showing of discrimination, observing that a Black juror had already been seated and that the People's peremptory challenge was the first one used by either party to strike a prospective juror who was a person of color. In our view, County Court correctly determined that "defendant failed to allege facts or circumstances sufficient to raise an inference that the prosecutor exercised the peremptory challenge for a discriminatory purpose and, therefore, he did not satisfy the first step of the Batson analysis" (People v Skervin, 13 AD3d 661, 662 [3d Dept 2004], lv denied 5 NY3d 833 [2005]; see People v Hecker, 15 NY3d at 665; People v Anthony, 152 AD3d at 1050). It follows that the burden did not shift to the People to articulate a race-neutral explanation for the challenge, and County Court correctly refrained from assessing whether the explanation proffered by [*5]the People did so (see People v Skervin, 13 AD3d at 662; People v Henderson, 305 AD2d at 941).
Shortly thereafter, defendant revisited the Batson issue when the People used a peremptory challenge to strike a prospective juror who had an uncommon last name, arguing that he had now made out a prima facie case of discrimination because the prospective juror was one of the few Hispanic women, and potentially the only one, in the jury pool. This challenge came as a surprise to County Court, which replied that it had no idea "what [the prospective juror's] ethnicity" was. The People concurred that they did not know whether the prospective juror was Hispanic, adding that they saw no reason to provide an explanation for their peremptory challenge because defendant had not made out a prima facie case of discrimination. County Court agreed, stating that the prospective juror's last name did not "strike" the court as Hispanic and emphasizing that the court was unsure "what her nationality . . . or ethnicity" was.[FN1] As neither County Court nor the People were aware of the prospective juror's ethnicity, and defendant pointed to nothing beyond her surname to establish what that ethnicity was, County Court properly determined that defendant had not established a prima facie case of discrimination that would oblige the People to provide a race-neutral explanation for the peremptory strike (see People v Stubbs, 183 AD2d 178, 180-181 [3d Dept 1992], lv denied 81 NY2d 848 [1993]; People v Smith, 186 AD2d 35, 37-38 [1st Dept 1992], affd 81 NY2d 875 [1993]; People v Liguori, 149 AD2d 624, 625 [2d Dept 1989], lv denied 74 NY2d 813 [1989]).
We finally turn to defendant's contention that the sentence was harsh and excessive. To the extent that defendant raises, and preserved at sentencing, the argument that "he was punished for exercising his right to trial because the sentence he was ultimately given was significantly longer than" the one that County Court had agreed to impose if defendant pleaded guilty prior to the second trial, we reject it (People v Hayward, 213 AD3d 989, 995 [3d Dept 2023]; see People v Houze, 177 AD3d 1184, 1189 [3d Dept 2019], lv denied 34 NY3d 1159 [2020]). The record does not reflect that County Court was motivated by impermissible "retaliation or vindictiveness" in sentencing defendant; rather, County Court set forth the legitimate sentencing factors it had considered in fashioning its sentence and explained that it no longer felt that a lesser sentence was appropriate after learning at trial that a round was chambered in the handgun that defendant dropped on a public street in broad daylight, posing an obvious danger to any passerby who might see the gun and pick it up (People v Massey, 45 AD3d 1044, 1048 [3d Dept 2007], lv denied 9 NY3d 1036 [2008]). Moreover, after considering those factors ourselves, we do not perceive the sentence to be unduly harsh or severe (see People v Hatcher, 168 AD3d 1313, 1313 [3d Dept 2019], lv denied 33 NY3d [*6]1031 [2019]; People v Silver, 168 AD3d 1225, 1228 [3d Dept 2019], lv denied 33 NY3d 954 [2019]; People v Hasenflue, 110 AD3d 1108, 1108 [3d Dept 2013], lv denied 22 NY3d 1199 [2014]).
Garry, P.J., Pritzker, Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: In his appellate brief, defendant asserts that the prospective juror's last name was "obviously" Hispanic and cites, for the first time, Internet sources indicating that the name has a Spanish origin. Suffice it to say, it was incumbent upon defendant to "articulate and develop all of the grounds supporting the claim, both factual and legal, during the colloquy in which the objection is raised and discussed" (People v Childress, 81 NY2d 263, 268 [1993]), and he cannot now use information outside of the record to argue that he had made out a prima facie case of discrimination (see People v Salazar, 132 AD3d 418, 419 [1st Dept 2015], lv denied 26 NY3d 1150 [2016]; see also People v Taylor, 185 AD3d 724, 728 [2d Dept 2020]).