People v Oates (2023 NY Slip Op 06775)

People v Oates

2023 NY Slip Op 06775

Decided on December 28, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 28, 2023

112202
[*1]The People of the State of New York, Respondent,
v
Duane D. Oates, Appellant.

Calendar Date:November 16, 2023

Before:Egan Jr., J.P., Clark, Aarons, Ceresia and Mackey, JJ.

Rural Law Center of New York, Inc., Plattsburgh (Keith F. Schockmel of counsel), for appellant.
John M. Muehl, District Attorney, Cooperstown (Christopher James Di Donna of counsel), for respondent.

Clark, J.
Appeal from a judgment of the County Court of Otsego County (John F. Lambert, J.), rendered May 6, 2019, upon a verdict convicting defendant of the crime of criminal possession of a controlled substance in the third degree.
On March 7, 2018, detectives from the City of Oneonta Police Department conducted a traffic stop. In the course of that stop, the detectives discovered cocaine inside a backpack owned by defendant, a passenger in the vehicle. Defendant and the driver — the codefendant — were arrested, and defendant was charged with criminal possession of a controlled substance in the third degree. Following a jury trial where he was convicted as charged, defendant was sentenced to a prison term of eight years followed by three years of postrelease supervision. Defendant appeals.
Initially, defendant argues that his conviction is not supported by legally sufficient evidence because the People failed to prove that he knowingly possessed the cocaine and that he intended to sell it. Although defendant moved to dismiss the indictment at the close of the People's case, premised solely upon the People's alleged failure to prove the "intent to sell" element, his failure to renew such motion at the close of his proof renders his challenge to the legal sufficiency of the evidence unpreserved (see People v Decker, 218 AD3d 1026, 1028-1029 [3d Dept 2023], lv denied 40 NY3d 1012 [2023]; People v Persen, 185 AD3d 1288, 1289 [3d Dept 2020], lv denied 36 NY3d 1099 [2021]). Nevertheless, to the extent that defendant also argues that the verdict is not supported by the weight of the evidence, premised upon the same grounds, we necessarily examine whether the People established each element of the crime (see People v Franklin, 216 AD3d 1304, 1305-1306 [3d Dept 2023], lv denied 40 NY3d 934 [2023]; People v Abdullah, 206 AD3d 1340, 1341 [3d Dept 2022], lv denied 39 NY3d 939 [2022]). When undertaking such review, we must first view the evidence in a neutral light to determine whether a contrary verdict would have been unreasonable; if not, we defer to the jury's credibility determinations and consider the relative probative force of conflicting testimony and the relative strength of the conflicting inferences that may be drawn therefrom to determine whether the weight of the evidence supports the verdict (see People v Truitt, 213 AD3d 1145, 1146-1147 [3d Dept 2023], lv denied 39 NY3d 1144 [2023]; People v Lekovic, 200 AD3d 1501, 1502 [3d Dept 2021], lv denied 38 NY3d 1008 [2022]). As relevant here, "[a] person is guilty of criminal possession of a controlled substance in the third degree when he [or she] knowingly and unlawfully possesses . . . a narcotic drug with intent to sell it" (Penal Law § 220.16 [1]).
Here, a different verdict would not have been unreasonable, given defendant's denial that he knowingly possessed the cocaine or that he intended to sell the same. At trial, the codefendant admitted that his mother was a drug dealer and that he picked defendant [*2]up at her behest. According to the codefendant, defendant entered the vehicle, dropped a bag of cocaine in the codefendant's lap and told him to hide it because they were about to be pulled over. The codefendant stated that, without defendant's knowledge, he quickly placed the cocaine in a mesh side pocket of defendant's backpack. The codefendant admitted that, in exchange for his testimony against defendant, the People agreed to allow him to plead guilty to a misdemeanor in satisfaction of the felony charge against him and that his sentence would involve no jail time.
In the police body camera footage, defendant consents to have his backpack searched and, after the police discover a small clear plastic bag, defendant and the codefendant are placed under arrest. The detectives testified that the clear plastic bag contained two smaller baggies, one with a powder substance and another with a white chunky substance, and subsequent lab tests confirmed that both baggies contained cocaine and, combined, weighed approximately 10 grams. Further, the detectives stated that, during their search of defendant and his backpack, they discovered a digital scale which had trace amounts of cocaine on it, two cell phones and approximately $1,200 in cash. Defendant also revealed that he was from out of town, and the detectives explained that it was common practice for drug dealers to travel to smaller cities or towns and connect with local dealers to sell their product. According to the detectives, the quantity of cocaine present in defendant's backpack was not consistent with personal use but, rather, said quantity in conjunction with the scale, the cash, the cell phones and defendant's status as a traveler who associated with a known drug dealer led them to believe that defendant was in Oneonta to sell drugs.
Defendant testified and denied knowing that the codefendant had placed the cocaine in his backpack. However, defendant admitted that the codefendant was picking him up to drive him to the home of the codefendant's mother, where he planned to buy cocaine and "share it with her." He also explained that he used the digital scale to weigh cocaine he bought to ensure he was given the correct amount. According to defendant, the cash in his possession was a loan from his mother and sister, and he explained that he was in Oneonta because he and his girlfriend were considering moving there, not because he was dealing drugs. Given defendant's denials, the jury could have reached a different verdict. However, having listened to the testimony, the jury credited the codefendant's testimony and the detectives' testimony that the scale, the cash sum and defendant's association with a known drug dealer were consistent with an intent to sell said cocaine. Having independently weighed the conflicting evidence and considering the inferences that may be drawn therefrom, we are satisfied that the verdict convicting defendant of criminal possession of a controlled substance in the [*3]third degree is supported by the weight of the evidence (see People v Gentry, 218 AD3d 919, 921-922 [3d Dept 2023], lv denied 40 NY3d 1012 [2023]; People v Bombard, 187 AD3d 1417, 1418-1419 [3d Dept 2020]; People v Byrd, 152 AD3d 984, 987 [3d Dept 2017]).
With that said, we agree with defendant that County Court erred in denying his request to instruct the jury on the lesser included offense of criminal possession of a controlled substance in the seventh degree. "A defendant is entitled to a lesser included offense charge upon request when (1) it is impossible to commit the greater crime without concomitantly committing the lesser offense by the same conduct and (2) there is a reasonable view of the evidence to support a finding that the defendant committed the lesser offense but not the greater" (People v Magnuson, 177 AD3d 1089, 1094-1095 [3d Dept 2019] [internal quotation marks and citations omitted]; see CPL 300.50 [1]; People v Sorrell, 196 AD3d 923, 925-926 [3d Dept 2021], lv denied 37 NY3d 1029 [2021]). As to the first prong, the charge of criminal possession of a controlled substance in the third degree requires that defendant "knowingly and unlawfully possesse[d] . . . a narcotic drug with intent to sell it" (Penal Law § 220.16 [1]), while the charge of criminal possession of a controlled substance in the seventh degree merely requires that he "knowingly and unlawfully possesses a controlled substance" (Penal Law § 220.03). Under New York Law, cocaine meets the definition of both a narcotic drug and a controlled substance (see Penal Law § 220.00 [5], [7]; Public Health Law § 3306 [II] [b] [4]; see e.g. People v Paul, 202 AD3d 1203, 1205 n 2 [3d Dept 2022], lv denied 38 NY3d 1034 [2022]; People v Danford, 88 AD3d 1064, 1068 [3d Dept 2011], lv denied 18 NY3d 882 [2012]).[FN1] Consequently, it is impossible to commit the crime of criminal possession of a controlled substance in the third degree without also committing the lesser offense of criminal possession of a controlled substance in the seventh degree, satisfying the first prong (see People v Acevedo, 118 AD3d 1103, 1107 [3d Dept 2014], lv denied 26 NY3d 925 [2015]; People v Berry, 5 AD3d 866, 867 [3d Dept 2004], lv denied 3 NY3d 637 [2004]).
As to the second prong, "whether there is a reasonable view of the evidence that would support a finding that a defendant committed only the lesser offense, we must view the evidence in the light most favorable to the defendant" (People v Grayson, 138 AD3d 1250, 1251 [3d Dept 2016], lv denied 27 NY3d 1132 [2016]; accord People v Luciano, 152 AD3d 989, 995 [3d Dept 2017], lv denied 30 NY3d 1020 [2017]). As our weight of the evidence analysis recognized, a reasonable view of the evidence presented could support that defendant did not have the requisite intent to sell the cocaine — the only element that differentiates the two charges (see People v Fairley, 63 AD3d 1288, 1289-1290 [3d Dept 2009], lv denied 13 NY3d 743 [2009]). Here, the jury would have had [*4]to find that the circumstantial evidence — the scale, the cash and defendant's association with the codefendant's mother — supported an inference that defendant intended to sell the cocaine. However, viewing the evidence in the light most favorable to defendant, as we must, his testimony provided plausible explanations for each of those items which, if credited by the jury, would have supported a finding that he was guilty of the lesser offense but not the greater (see People v McFadden, 106 AD3d 1020, 1023-1024 [2d Dept 2013]; People v Smith, 74 AD3d 1249, 1250 [2d Dept 2010]; People v McCoy, 59 AD3d 856, 857-858 [3d Dept 2009]; compare People v Acevedo, 118 AD3d at 1105-1107; People v Fairley, 63 AD3d at 1290; People v Bond, 239 AD2d 785, 786 [3d Dept 1997], lv denied 90 NY2d 891 [1997]). Because defendant made an explicit request for such authorized jury instruction, County Court's failure to provide it requires reversal of defendant's conviction (see CPL 300.50 [2]; see People v Hernandez, 42 AD3d 657, 658-662 [3d Dept 2007]), and we remit this matter for a new trial.
In light of this determination, defendant's remaining contentions have been rendered academic.
Egan Jr., J.P., Aarons, Ceresia and Mackey, JJ., concur.
ORDERED that the judgment is reversed, on the law, and matter remitted to the County Court of Otsego County for further proceedings pursuant to CPL 470.75.

Footnotes

Footnote 1: In declining to issue a charge for the lesser included offense, County Court stated that defendant was only accused of possessing cocaine, and that cocaine was a narcotic drug but not a controlled substance. In reaching this conclusion, County Court ignored the definitions of those terms. Penal Law § 220.00 (5) defines a controlled substance as "any substance listed in schedule I, II, III, IV or V of [Public Health Law § 3306]." Because a narcotic drug is defined as "any controlled substance listed in [Public Health Law § 3306] schedule I (b), I (c), II (b) or II (c) other than methadone" (Penal Law § 220.00 [7] [emphasis added]), it is clear that any and all substances that meet the definition of a narcotic drug under Penal Law § 220.00 (7) necessarily meet the definition of a controlled substance under Penal Law § 220.00 (5).