People v Smith (2025 NY Slip Op 02244)

People v Smith

2025 NY Slip Op 02244

Decided on April 17, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 17, 2025

113268
[*1]The People of the State of New York, Respondent,
v
Matthew C. Smith, Appellant.

Calendar Date:February 18, 2025

Before:Ceresia, J.P., Fisher, McShan and Mackey, JJ.

Matthew C. Hug, Albany, for appellant.
Kirk O. Martin, District Attorney, Owego (Cheryl Mancini of counsel), for respondent.

Fisher, J.
Appeal from a judgment of the County Court of Tioga County (Gerald Keene, J.), rendered July 30, 2021, upon a verdict convicting defendant of the crimes of criminal possession of a controlled substance in the second degree, criminal possession of a controlled substance in the third degree (two counts), criminal sale of a controlled substance in the third degree and promoting prison contraband in the first degree.
In March 2019, defendant was in the front passenger seat of a vehicle driven by Jessica Forsythe and occupied by backseat passengers William McClintic and Adrianna Blake, when that vehicle was stopped by the State Police who were searching for Forsythe because she had a warrant for her arrest and a suspended driver's license. During the traffic stop, with the aid of a canine officer, more than 10 ounces (290 grams) of methamphetamine were located under the hood of the vehicle in a black bag that also contained packaging materials and marihuana. Additional drugs, needles and packaging materials were found inside the vehicle and the trunk, and more than 20 grams of methamphetamine were discovered on the side of the road in a wrapped plastic bundle. As defendant was ordered out of the vehicle, a plastic bag containing a white substance was observed on the seat where he had been sitting, and a digital scale was found in his back pocket. Following his arrest and while at the county jail, defendant was alleged to have possessed fentanyl and sold that fentanyl to another incarcerated individual.
Thereafter, defendant was charged by indictment with criminal possession of a controlled substance in the second degree (count 1), two counts of criminal possession of a controlled substance in the third degree (counts 2 and 4), criminal sale of a controlled substance in the third degree (count 3) and promoting prison contraband in the first degree (count 5), in connection with the 10 ounces of methamphetamine and packaging materials discovered under the hood of the vehicle during the traffic stop (counts 1 and 2) and the incident in the jail (counts 3, 4 and 5).[FN1] County Court denied defendant's motion to suppress the evidence obtained during the traffic stop and, after hearing a Molineux application at the start of trial, permitted the People to ask Forsythe about a separate incident in another county where defendant was present during her arrest. Following a jury trial, defendant was convicted on all counts. He was sentenced, as a second felony offender, to a prison term of eight years, to be followed by five years of postrelease supervision, on the conviction for count 1, and to lesser concurrent terms of incarceration on the remaining convictions. Defendant appeals.
Defendant contends that the convictions are unsupported by legally sufficient evidence and that the verdict is against the weight of the evidence, because the proof did not show that he possessed a controlled substance or that he did so with the intent to sell.[FN2] In conducting a legal sufficiency [*2]analysis, "we view the facts in the light most favorable to the People and examine whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Santiago, 206 AD3d 1466, 1467 [3d Dept 2022] [internal quotation marks and citations omitted]). Whereas for an evaluation of the weight of the evidence, "this Court must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and then, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Rivera, 212 AD3d 942, 944 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 39 NY3d 1113 [2023]). Since defendant was not found in physical possession of a controlled substance, in order to meet their burden of proving that defendant had constructive possession of the drugs, the People were required to establish that he had "exercised dominion or control over the property by a sufficient level of control over the area in which the contraband was found," not that he was the owner or that he had exclusive access (People v Durfey, 170 AD3d 1331, 1332 [3d Dept 2019] [internal quotation marks, brackets and citations omitted], lv denied 34 NY3d 980 [2019]; see Penal Law § 10.00 [8]; People v Davis, 187 AD3d 1291, 1292 [3d Dept 2020]). Where, as here, the People also rely on the automobile presumption, "[t]he presence of a controlled substance in an automobile . . . is presumptive evidence of knowing possession thereof by each and every person in the automobile at the time such controlled substance was found" (Penal Law § 220.25 [1]). However, the automobile presumption "is rebuttable, either by the defendant's own testimony or by any other evidence, including the inherent or developed incredibility of the prosecution's witnesses" (People v Adorno, 216 AD2d 686, 688 [3d Dept 1995], lv denied 86 NY2d 839 [1995]; see People v Williams, 301 AD2d 794, 795 [3d Dept 2003]). Intent to sell may be established based on the amount of drugs at issue, the presence of scales or packaging materials, and that the defendant possessed them for the purpose of financial gain, rather than personal consumption (see People v Smith, 201 AD3d 1126, 1130 [3d Dept 2022], lv denied 38 NY3d 1035 [2022]; People v Crooks, 129 AD3d 1207, 1209 [3d Dept 2015], affd 27 NY3d 609 [2016]).
At trial, the state trooper who initiated the traffic stop testified that, once he activated his emergency lights and sirens, he observed all occupants in the vehicle making furtive movements — particularly defendant, who was seen dipping down in his seat and reaching or retrieving something. He further testified that the vehicle did not stop for roughly a mile, after which he ordered the occupants [*3]out of the vehicle; defendant was found to have a digital scale in his possession, and on his seat was a plastic bag containing a white substance that was later determined to be a common cutting agent for heroin. After removing the occupants, the trooper performed a canine search of the exterior of the vehicle which led to several "alerts," ultimately leading to the discovery of a black bag with "girl power" written on it hidden under the hood of the vehicle. This bag contained packaging materials, marihuana and 290 grams of methamphetamine, which the trooper testified was worth approximately $29,000 and was not for personal consumption. The trooper also confirmed the discovery of a drug ledger, other packaging materials and more drugs found in the passenger compartment of the vehicle and in the trunk. He further confirmed the recovery of a bundled bag of methamphetamine that was found along the road, which weighed more than 20 grams and was worth approximately $2,300.
McClintic and Blake both testified that, once the trooper turned on his lights and sirens, defendant told Forsythe to keep driving and not to stop, and then they saw defendant throw the bundle of methamphetamine out of the window.[FN3] McClintic testified that he had known Forsythe for more than 10 years, and that, at the time of the traffic stop, she had been in a relationship with defendant for at least a year. Both McClintic and Blake testified that Forsythe and defendant did not have any jobs, but that they would buy McClintic and Blake clothing, food and had paid for a stay the night before the incident at a casino hotel. When asked whether the money actually came from Forsythe and not defendant, McClintic testified that "they split the money, everything was 50/50 down the middle no matter what" and that "[t]hey had their own thing going on." McClintic and Blake further testified that Forsythe and defendant provided them drugs while at the casino hotel and consumed drugs with them in the room, including methamphetamine and heroin or fentanyl.[FN4] Although neither saw defendant near the hood of the vehicle where the drugs were found, both testified that defendant had previously driven the vehicle and McClintic testified that defendant "definitely had access to" the vehicle prior to the traffic stop. To this point, footage from a surveillance camera at the casino hotel parking garage depicted both Forsythe and defendant rummaging through the front and back of the vehicle's passenger compartment and trunk before they left the premises.
Following his arrest and while in classification at the county jail,[FN5] McClintic further testified that defendant offered him heroin when they first got there, but that defendant later told him that he had to flush it once other incarcerated individuals on the block started to overdose on it. One of those incarcerated individuals on the block was William Stern, who testified that he was in the general population at the county jail and previously knew both [*4]McClintic and defendant.[FN6] According to Stern, he was able to communicate through a door with defendant, who offered him to "get twisted" with some "dope" in exchange for coffee sweetener and candy. Stern testified that defendant slid under the door a rolled-up piece of toilet paper with the drugs inside and told him to be careful because it was "good," which Stern interpreted as meaning it contained both heroin and fentanyl. Stern further testified that he distributed some of the drugs to other incarcerated individuals, and then consumed some himself — ultimately "black[ing] out" and being taken to the medical unit. Video footage from a surveillance camera in the cell block depicted the exchange between Stern and defendant, and Stern offered testimony explaining what was happening at certain intervals of the video. Several correction officers also provided testimony as to the county jail and defendant's incarceration there, including that anything not issued to an incarcerated individual was considered "contraband" and that each new detainee was given a handbook outlining the facility rules, which defendant had received at intake.
Here, in viewing the evidence in the light most favorable to the People, applying both the principles of constructive possession and the automobile presumption, we conclude that legally sufficient evidence exists for a rational juror to conclude that defendant possessed the methamphetamine at issue under counts 1 and 2 (see People v Colon, 177 AD3d 1086, 1088 [3d Dept 2019]). The evidence demonstrated that defendant had shared access to the rental vehicle with Forsythe, had driven it before, and had recently consumed and provided others with methamphetamine the night before the traffic stop (see People v Leader, 27 AD3d 901, 904 [3d Dept 2006]). Once the state trooper activated his emergency lights and sirens, defendant was the only occupant of the vehicle to have possessed any quantity of methamphetamine when he was seen by McClintic and Blake throwing the bundle of it out the window (see People v Sanders, 185 AD3d 1280, 1286 [3d Dept 2020], lv denied 35 NY3d 1115 [2020]). After the vehicle stopped, defendant was also the only occupant to have been in possession of any material to prepare methamphetamine for sale — the digital scale in his back pocket — and there was a common cutting agent/adulterant found where he was sitting, as well as plastic baggies dispersed throughout the vehicle that matched the same baggies found in the black bag under the hood (see People v Covington, 222 AD3d 1166, 1168 [3d Dept 2023], lv denied 41 NY3d 964 [2024]; People v Grovner, 206 AD3d 1638, 1639-1640 [4th Dept 2022], lv denied 38 NY3d 1150 [2022]). Despite there being no evidence of defendant directly accessing the black bag containing methamphetamine found under the hood of the vehicle, the foregoing evidence provided a legally sufficient basis for the application of the automobile presumption against all occupants, including defendant[*5](see People v Nelson, 156 AD3d 1112, 1115 [3d Dept 2017], lv denied 31 NY3d 1151 [2018]; People v Leader, 27 AD3d at 904; see also Penal Law § 220.25 [1]). As relating to counts 3, 4 and 5, we similarly find that the People's proffer — notably the recovery of fentanyl and video footage coupled with Stern's narration of what was occurring and his testimony of requiring medical attention after consuming the drugs provided by defendant — when viewed in the light most favorable to the People, constitutes legally sufficient evidence to support these charges (see People v Gagnier, 146 AD3d 1019, 1021-1022 [3d Dept 2017], lv denied 29 NY3d 1079 [2017]; People v Verley, 121 AD3d 1300, 1301 [3d Dept 2014], lv denied 24 NY3d 1221 [2015]).
Turning to defendant's challenge to the weight of the evidence for counts 1 and 2, a different verdict would not have been unreasonable had the jury credited the testimony of Forsythe, who admitted that she was the owner of the methamphetamine under the hood of the vehicle and that she threw the bundled bag of methamphetamine out of the vehicle. She further testified that defendant did not know about these drugs, that she "always" drove the vehicle, and that the drugs remained under the hood of the vehicle the entire time they were at the casino hotel where defendant did not have access to them. Nevertheless, Forsythe's testimony challenging defendant's dominion and control over the methamphetamine under the hood of the vehicle created a credibility issue for the jury to resolve (see People v Garcia-Toro, 155 AD3d 1086, 1086-1087 [3d Dept 2017], lv denied 30 NY3d 1115 [2018]). The jury was free to credit the other witnesses' testimony over her explanation relating to defendant's access to the vehicle or more specifically under the hood — particularly in light of the surveillance video from the casino hotel parking garage that depicted her opening the hood of the vehicle while standing right next to defendant (see People v Williams, 301 AD2d at 795).[FN7] Although Forsythe testified that defendant did not know about the methamphetamine under the hood of the vehicle, she had no explanation for the other evidence that defendant had consumed methamphetamine and provided it to others at the casino hotel, or for the digital scale found in his back pocket at the time of the traffic stop (see People v Echavarria, 53 AD3d 859, 862 [3d Dept 2008], lv denied 11 NY3d 832 [2008]). Rather, the large quantity of methamphetamine under the hood coupled with the digital scale, plastic baggies in the vehicle and bundle of eight separate "balls" of methamphetamine that were thrown out the window, support the inference that the drugs under the hood were accessed and packaged for sale during the casino trip or car ride before the traffic stop, and that defendant was aware of its presence (see People v Kalabakas, 183 AD3d 1133, 1141 [3d Dept 2020], lv denied 35 NY3d 1067 [2020]). Based on this evidence and Forsythe's admissions to selling drugs and [*6]using the proceeds to support herself and her colleagues such as defendant, whom she was dating and lived with, defendant's association with a known drug dealer, combined with the quantity of the drugs, packaging materials and digital scale recovered during the traffic stop were also consistent with an intent to sell the methamphetamine (see People v Oates, 222 AD3d 1271, 1273 [3d Dept 2023]; see generally People v Garcia, 30 AD3d 833, 835 [3d Dept 2006]). These circumstances amount to more than the "mere presence" or "mere knowledge" as portrayed in the cases relied upon by defendant — which also did not involve the automobile presumption (see People v Hunt, 185 AD3d 1531, 1532-1533 [4th Dept 2020]; People v Burns, 17 AD3d 709, 710-711 & n [3d Dept 2005]).Accordingly, in viewing the evidence in a neutral light and deferring to the credibility determinations of the jury, coupled with the presumption of knowing possession (see Penal Law § 220.25 [1]), which we find was not rebutted, we are satisfied that the verdict is supported by the weight of the evidence for counts 1 and 2 (see People v Sanders, 185 AD3d at 1286; People v Kalabakas, 183 AD3d at 1141; People v Colon, 177 AD3d at 1088; People v Leader, 27 AD3d at 904; People v Adorno, 216 AD2d at 688-689).
As to defendant's challenge to the weight of the evidence for counts 3, 4 and 5, although a different verdict would not have been unreasonable considering that the testimony of McClintic and Stern were premised on agreements to testify against defendant in exchange for a favorable sentence, these issues were fully explored at trial and presented credibility assessments for the jury to resolve (see People v Montford, 207 AD3d 811, 813-814 [3d Dept 2022], lv denied 39 NY3d 941 [2022]). However, considering the telling video footage and recovery of fentanyl, coupled by the fact that Stern required medical attention after consuming the narcotic sold to him by defendant on camera, we are satisfied that the verdict is not against the weight of the evidence for counts 3, 4 and 5 (see People v Smith, 201 AD3d at 1130-1131; People v Gagnier, 146 AD3d at 1022).
Next, defendant contends that the traffic stop was constitutionally invalid, and therefore County Court erred by denying his motion to suppress. We disagree. Automobile stops implicate certain constitutional limitations, and are therefore "lawful only when based on probable cause that a driver has committed a traffic violation; when based on a reasonable suspicion that the driver or occupants of the vehicle have committed, are committing, or are about to commit a crime; or, when conducted pursuant to nonarbitrary, nondiscriminatory, uniform highway traffic procedures" (People v Hinshaw, 35 NY3d 427, 430 [2020] [internal quotation marks and citations omitted]). At the suppression hearing, the state trooper testified that Forsythe was the person of interest in a narcotics investigation. On the morning of the traffic stop, he had been briefed that [*7]Forsythe had an arrest warrant and a suspended driver's license, and he had been provided a photograph of her. According to the trooper, while the State Police were executing a search warrant that morning at a residence that Forsythe was known to frequent, they learned that she was not there but en route to the location. The trooper set up along the road near an intersection leading to that residence and then observed a vehicle approach, which is when he was able to positively identify Forsythe as the driver of that vehicle from the picture that he had with him. Based on this, deferring to the great weight that is accorded to the trial court's determination at a suppression hearing, we are satisfied that the People established that the trooper had a reasonable suspicion that Forsythe, as the driver of that vehicle without a valid license and with an active arrest warrant, was committing or had committed a crime (see People v Hunter, 219 AD3d 975, 978-979 [3d Dept 2023]; People v Houghtalen, 89 AD3d 1163, 1165 [3d Dept 2011]). Accordingly, County Court properly denied the motion to suppress.
Defendant also challenges County Court's Molineux ruling that allowed the People to ask Forsythe whether defendant was present on a subsequent occasion when she was arrested for possession of a controlled substance because it was offered to establish propensity. We are not persuaded. Although evidence of unconnected, uncharged criminal conduct is inadmissible if offered only to establish a defendant's criminal propensities, it may be admissible if offered for a relevant nonpropensity purpose (see People v Kendricks, 226 AD3d 1150, 1155 [3d Dept 2024], lv denied 41 NY3d 1003 [2024]; People v Hebert, 218 AD3d 1003, 1009 [3d Dept 2023], lv denied 40 NY3d 1080 [2023]; see also People v Denson, 26 NY3d 179, 186-187 [2015])."Once a relevant purpose for [the evidence] is demonstrated, the question of whether the probative value of the [evidence] outweighs any prejudice to the defendant rests within the trial court's sound discretion" (People v Brinkley, 174 AD3d 1159, 1165 [3d Dept 2019] [citation omitted], lv denied 34 NY3d 979 [2019]; see People v Ruffin, 191 AD3d 1174, 1179 [3d Dept 2021], lv denied 37 NY3d 960 [2021]). "Where a proper limiting instruction is given to the jury, prejudice can be dissipated. A court's decision whether to admit Molineux evidence is reviewed for abuse of discretion" (People v Kendricks, 226 AD3d at 1155 [internal quotation marks, brackets and citations omitted]; see People v Torres, 19 AD3d 732, 734 [3d Dept 2005], lv dismissed 5 NY3d 810 [2005]). Here, the evidence was properly admitted for the nonpropensity purposes of proving background information and clarity into the relationship between defendant and Forsythe. Further, it cannot be said that the probative value was outweighed by the prejudicial impact of such evidence, particularly in light of the fact that limiting instructions were given after Forsythe's testimony and during [*8]the final instructions which emphasized the limited purposes for which the jury could consider such evidence (see People v Lewis, 224 AD3d 1143, 1152 [3d Dept 2024], lv denied 42 NY3d 939 [2024]; People v Perulli, 217 AD3d 1133, 1136-1137 [3d Dept 2023], lv denied 40 NY3d 1081 [2023]). Therefore, we perceive no abuse of discretion or error in admitting such evidence (see People v Calvano, 30 NY2d 199, 206 [1972]; People v Doane, 212 AD3d 875, 881 [3d Dept 2023], lv denied 39 NY3d 1154 [2023]; People v Henry, 166 AD2d 720, 720 [2d Dept 1990], lv denied 77 NY2d 907 [1991]; see also People v Ingram, 71 NY2d 474, 480-481 [1988]).
Lastly, defendant contends that he was denied the effective assistance of counsel primarily because his counsel did not demand an accomplice as a matter of law charge as to Blake, McClintic and Stern. To prevail on his claim that he was denied effective assistance of counsel, defendant must demonstrate "that the attorney failed to provide meaningful representation and that there were no strategic or other legitimate explanations for counsel's allegedly deficient conduct" (People v Gaylord, 224 AD3d 1169, 1172-1173 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 42 NY3d 926 [2024]). An attorney's "performance must be evaluated to determine whether the tactics and strategies were consistent with those of a reasonably competent attorney" (People v White-Span, 182 AD3d 909, 914 [3d Dept 2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 1071 [2020]). In doing so, "counsel's efforts should not be second-guessed with the clarity of hindsight to determine how the defense might have been more effective" (People v Perry, 148 AD3d 1224, 1225 [3d Dept 2017] [internal quotation marks and citation omitted]), and "counsel will not be found to be ineffective on the basis that he or she failed to make an argument or motion that has little or no chance of success" (People v Lorenz, 211 AD3d 1109, 1113 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 39 NY3d 1112 [2023]).
Here, County Court only provided an accomplice as a matter of fact charge as it relates to counts 1 and 2 for Blake and McClintic. Had there been a request for an accomplice as a matter of law charge, it would have been proper as to them and Stern for all counts (see People v Sweet, 78 NY2d 263, 268 [1991]; see also CPL 60.22 [2]; People v Hines, 24 AD3d 964, 966 [3d Dept 2005], lv denied 6 NY3d 834 [2006]). Assuming, without deciding, that there was no strategic purpose for counsel's actions, it cannot be said that defendant would have derived a benefit from the accomplice as a matter of law charge, as there was substantial corroboration for the accomplice testimony in the form of physical and video evidence, and therefore the failure to provide this charge did not affect the outcome of the trial or cause defendant any prejudice (see People v Covington, 222 AD3d at 1171; see also People v Caban, 5 [*9]NY3d 143, 155 [2005]; People v Freeman, 78 AD3d 1505, 1506 [4th Dept 2010], lv denied 15 NY3d 952 [2010]; People v Smith-Merced, 50 AD3d 259, 259 [1st Dept 2008], lv denied 10 NY3d 939 [2008]; People v Leffler, 13 AD3d 164, 165 [1st Dept 2004], lv denied 4 NY3d 800 [2005]).To the further extent that defendant faults his trial counsel for not challenging the reliability of the state trooper's information before effectuating the traffic stop, such contention is without merit (see People v Hunter, 219 AD3d at 978-979; People v Cuevas, 140 AD3d 1313, 1314-1315 [3d Dept 2016]), and therefore cannot be the basis for an ineffective assistance of counsel claim (People v Lorenz, 211 AD3d at 1109). Accordingly, when considering the totality of defense counsel's representation, we are satisfied that defendant received meaningful representation (see People v Moore, 223 AD3d 1085, 1098 [3d Dept 2024], lv denied 41 NY3d 1003 [2024]; People v Thomas, 33 AD3d 1053, 1055 [3d Dept 2006], lv denied 8 NY3d 885 [2007]; People v Hines, 24 AD3d at 966). We have examined defendant's remaining contentions and have found them to be without merit.
Ceresia, J.P., McShan and Mackey, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Counts 1 and 2 concerned only the recovery of the 290 grams of methamphetamine discovered under the hood of the vehicle; none of the separate quantities of drugs recovered from the other parts of the vehicle and the side of the road were included in any of the charges of the indictment.

Footnote 2: Defendant's legal sufficiency challenge is preserved only to the extent that he contests possession, as his motion seeking a trial order of dismissal did not contest the aggregate weight or laboratory results confirming the identity of the recovered substances.

Footnote 3: Both McClintic and Blake also received charges relating to the methamphetamine discovered under the hood of the vehicle, and testified that they entered into a cooperation agreement with the People whereby they agreed to testify truthfully at defendant's trial in return for a reduced sentence.

Footnote 4: McClintic initially testified that defendant gave him heroin in the casino hotel room but acknowledged that sometimes fentanyl is passed off as heroin and, on cross-examination, surmised that what he was given by defendant in the room was "probably fentanyl."

Footnote 5: Classification is the period of time that incarcerated individuals are kept isolated in a cell when they first arrive at the facility.

Footnote 6: Stern's testimony was also secured by a similar cooperation agreement.

Footnote 7: Forsythe claimed that she did not mean to open the hood and was not accessing the drugs under the hood in the surveillance video, but rather that she meant to open the trunk and "probably hit the wrong button" because the hood button and trunk button were right next to each other. This is significant as to access because the video also reveals defendant accessing the trunk by hitting the same button, undermining her contention that defendant did not have access to the hood or front of the vehicle since he was able to push the trunk button right next to the hood button.